[Cite as *Ohio Valley Associated Bldrs. & Contrs. v. Rapier Elec., Inc.*, 2014-Ohio-1477.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


OHIO VALLEY ASSOCIATED     :
BUILDERS & CONTRACTORS,                CASE NOS. CA2013-07-110
                                          :                          CA2013-07-121

      Plaintiff-Appellant,

                                          :             O P I N I O N
                                                            4/7/2014

     - vs -                              :

                                          :

RAPIER ELECTRIC, INC.,                    :

      Defendant-Appellee.          :

                                          :


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-01-0363


Taft, Stettinius & Hollister, LLP, Victoria L. Nilles, Fred A. Ungerman, Jr. and Lowell T. Woods, 40 North Main Street, Suite 1700, Dayton, Ohio 45423 for plaintiff-appellant

Brandabur & Bowling, Jeffrey W. Bowling, Michael J. Brandabur and Kyle M. Rapier, 315 Monument Avenue, Hamilton, Ohio 45011, for defendant-appellee


      **S. POWELL, J.**

      {¶ 1} Plaintiff-appellant, Ohio Valley Associated Builders and Contractors (OVABC), appeals from the decision of the Butler County Court of Common Pleas granting judgment in favor of defendant-appellee, Rapier Electric, Inc. (Rapier), pursuant to Civ.R. 41(B)(2) on OVABC's claims alleging violations of Ohio's prevailing-wage laws as found in R.C. Chapter 4115. OVABC also appeals from the trial court's decision granting Rapier's motion for

attorney fees pursuant to R.C. 4115.16(D). For the reasons outlined below, we affirm the trial court's decisions as modified.

{¶ 2} OVABC is a membership association of nonunion construction contractors who submit bids for the purpose of securing public-improvement construction contracts. OVABC's members include Triton Services, TP Mechanical, RPC Mechanical, and Essex Management, among others. Rapier is an electrical contracting company that has been owned and operated by Dan and Naomi Rapier for over 25 years. It is undisputed that Dan Rapier is generally responsible for Rapier's compliance with the prevailing-wage laws. It is also undisputed that the lawsuit at issue here is just one of over 100 that OVABC has filed against small business owners throughout the state alleging violations of the prevailing-wage laws.

{¶ 3} This matter has a long and complex procedural history. As relevant here, on January 21, 2009, OVABC filed six complaints against Rapier alleging it had violated Ohio's prevailing-wage laws in regards to a series of construction projects on the Miami University campus located in Butler County, Ohio. Specifically, OVABC alleged violations in regards to Miami University's Pearson Plaza Renovation project; Art Museum Chiller Replacement project; Western Campus Steam Loop Connections Phase 2 project; North Campus Academic Quad Parking Garage project; Boyd Hall Chiller Replacement project; and Richard T. Farmer School of Business project. On a joint motion from the parties, the trial court consolidated the six cases and a five-day jury trial was scheduled to begin February 7, 2010.

{¶ 4} Prior to trial, on January 11, 2010, Rapier moved for summary judgment alleging OVABC lacked standing to proceed as an "interested party" under the prevailing-wage laws as defined by R.C. 4115.03(F). In response, OVABC dismissed its claim in regards to the Pearson Plaza Renovation project, but maintained its claims as to the other five projects. Thereafter, on February 3, 2010, the trial court issued its decision finding

OVABC lacked standing to proceed on its claims regarding the Western Campus Steam Loop Connections Phase 2 project, the North Campus Academic Quad Parking Garage project, and the Richard T. Farmer School of Business project. The next day, February 4, 2010, and just three days before trial was to begin, OVABC voluntarily dismissed all its claims against Rapier under Civ.R. 41(A).

{¶ 5} As this matter was pending, OVABC filed two additional complaints against Rapier alleging violations of the prevailing-wage laws in regards to Butler County's Government Services Center Court Remodel project and its Board of Elections project. As it had done previously, Rapier again filed a motion for summary judgment alleging OVABC lacked standing to proceed as an "interested party" as defined by R.C. 4115.03(F). Rapier also filed a motion requesting OVABC pay its attorney fees under R.C. 4115.16(D). On August 10, 2010, the trial court issued its decision granting Rapier's motion for summary judgment, but denied Rapier's request for attorney fees. OVABC then appealed.

{¶ 6} On January 18, 2011, this court issued a split decision finding OVABC had standing as an "interested party" to bring a claim under Ohio's prevailing-wage laws. *See Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 192 Ohio App.3d 29, 2011-Ohio-160 (12th Dist.) (Bressler, J., dissenting). Approximately two weeks after this decision was issued, OVABC refiled its complaint against Rapier alleging the same five claims in regards to the various Miami University construction projects. All of OVABC's claims against Rapier were then consolidated. Rapier then filed an answer to OVABC's resubmitted complaint. As part of its answer, Rapier explicitly stated the various Miami University construction projects were subject to the prevailing-wage laws. Rapier also acknowledged that Miami University was a "public authority" as defined by R.C. 4115.03(A).

{¶ 7} On April 19, 2011, the trial court issued a pretrial order setting the discovery cutoff deadline as November 10, 2011, with a two-day trial to begin on December 8, 2011.

- 3 -

The trial court also set the trial material exchange deadline as November 17, 2011. The parties then engaged in extensive discovery. However, OVABC did not request Rapier's certified payroll records from Miami University until October 27, 2011, a mere two weeks before the November 10, 2011 discovery cutoff deadline. It is undisputed that these documents are considered public records. Thereafter, on November 29, 2011, just nine days before the start of trial, OVABC dismissed its claims regarding the Government Services Center Court Remodel project and the Board of Elections project.

{¶ 8} On December 8, 2011, the matter proceeded to a bench trial before a magistrate as scheduled. During trial, the magistrate denied OVABC's request to introduce and admit certain evidence obtained from Miami University as being untimely produced on the morning of the first day of trial. The magistrate also denied OVABC's request for leave to call Elizabeth Davidson, the records custodian for Miami University's Department of Facilities Planning and Development, as a witness during its case-in-chief.

{¶ 9} At the close of OVABC's case, and pending the admission of exhibits, Rapier moved for dismissal pursuant to Civ.R. 41(B)(2). Without ruling on the admissibility of OVABC's exhibits, the magistrate granted Rapier's motion by finding OVABC failed to establish that the prevailing-wage laws were applicable to the various construction projects. OVABC then filed a number of objections to the magistrate's decision, all of which were denied. The trial court subsequently affirmed and adopted the magistrate's decision on June 18, 2012.

{¶ 10} Prior to issuing its decision on OVABC's objections to the magistrate's decision, Rapier again filed a motion requesting the trial court order OVABC to pay its attorney fees. OVABC opposed the motion and, after some delay, a hearing was held on the matter. Following this hearing, the trial court awarded Rapier $144,986.27 in attorney fees, $5,000 more than the $139,986.27 Rapier requested in its post-hearing memorandum. The trial

court later incorporated its decision into an entry filed on May 31, 2013. In so holding, the trial court specifically stated that such an award was "reasonable based on the complexity of the case and the need to present an aggressive defense."

{¶ 11} OVABC now appeals from the trial court's decision granting Rapier's motion to dismiss under Civ.R. 41(B)(2) and awarding Rapier $144,986.27 in attorney fees, raising three assignments of error for review. For ease of discussion, OVABC's first and second assignments of error will be addressed out of order.

{¶ 12} Assignment of Error No. 2:

{¶ 13} THE COURT ABUSED ITS DISCRETION IN NOT ADMITTING [MIAMI UNIVERSITY] EVIDENCE.

{¶ 14} In its second assignment of error, OVABC argues the trial court erred by affirming and adopting the magistrate's decision excluding certain evidence obtained from Miami University after the discovery cutoff deadline had passed and introduced on the morning of the first day of trial. OVABC also argues the trial court erred by denying it leave to call Elizabeth Davidson, the records custodian for Miami University's Department of Facilities Planning and Development, as a witness during its case-in-chief. In essence, OVABC argues the trial court's discovery sanctions imposed for failing to comply with the discovery deadline were improper and constitute an abuse of discretion. We disagree.

{¶ 15} A trial court maintains discretion to manage the discovery process. *Bank of Am., N.A. v. Singh*, 12th Dist. Butler No. CA2012-07-146, 2013-Ohio-1305, ¶ 17. This court reviews a trial court's decision to impose discovery sanctions for an abuse of discretion. *Lucchesi v. Fischer*, 12th Dist. Clermont No. CA2008-03-023, 2008-Ohio-5935, ¶ 6, citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254 (1996), syllabus. A decision constitutes an abuse of discretion only when it is found to be unreasonable, arbitrary, or unconscionable. *State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, ¶ 13; *Blakemore v.*

*Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} As the record reveals, OVABC attempted to introduce certain records obtained from Miami University regarding the various construction projects, as well as Davidson's testimony. However, OVABC first attempted to subpoena the desired documents – all of which are public records – on October 27, 2011, a mere two weeks before the discovery cutoff deadline expired. When questioned about the timing of this request, OVABC's counsel readily admitted to the trial court that they believed the matter would settle so they did not "pursue it actively."

{¶ 17} After not receiving a timely response, OVABC subpoenaed the desired documents again on December 5, 2011, a full 26 days after the discovery deadline had expired, only to obtain the documents on the morning of trial. The magistrate determined the documents obtained from Miami University, as well as the testimony from Davidson regarding these documents, must be excluded as their production on the morning of trial was improper and fell well-outside the discovery deadline cutoff. The trial court later affirmed and adopted the magistrate's decision as part of its entry overruling OVABC's objections.

{¶ 18} After a thorough review of the record, we find no abuse of discretion in the trial court's decision to exclude the so-called Miami University evidence. The discovery rules are intended to encourage prompt and complete discovery. In furtherance of this goal, it is imperative that both parties manage their time and develop their trial strategy in conformance with the discovery cutoff deadline established by the trial court. Here, the trial court established the discovery cutoff deadline in an entry filed on April 19, 2011, thereby giving the parties approximately seven months to gather their exhibits and potential evidence. Considering this matter had already been dismissed once on the eve of trial, this should have given OVABC plenty of time to obtain the necessary records from Miami University in support of its claims. Instead, for reasons unknown, OVABC waited until two weeks before the

discovery cutoff deadline to first issue a subpoena. The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. The trial court's decision to exclude this evidence was not an abuse of discretion. OVABC's second assignment of error is overruled.

{¶ 19} Assignment of Error No. 1:

{¶ 20} THE TRIAL COURT ERRED IN GRANTING RAPIER'S RULE 41(B)(2) MOTION.

{¶ 21} In its first assignment of error, OVABC argues the trial court erred by granting Rapier's motion to dismiss under Civ.R. 41(B)(2).

{¶ 22} Pursuant to Civ.R. 41(B)(2), after the plaintiff has completed the presentation of its evidence in a bench trial, "the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Once the defendant moves for involuntary dismissal, the trial court, as trier of the fact, "may then determine [the facts] and render judgment against the plaintiff or may decline to render any judgment until the close of all of the evidence." *Fairbanks Mobile Wash, Inc. v. Hubbell*, 12th Dist. Warren Nos. CA2007-05-062 and CA2007-05-068, 2009-Ohio-558, ¶ 76. Thus, when a motion for an involuntary dismissal is made, the trial court can choose either to dismiss the action or to proceed with further evidence. *Id.*, citing *Pacher v. Invisible Fence of Dayton*, 154 Ohio App.3d 744, 2003-Ohio-5333, ¶ 34 (2d Dist.). "The premise behind the rule is if the court in a bench trial disbelieves the plaintiff's facts or disagrees with the plaintiff's urged application of the law, then there is no reason to hear the defendant's case." *Martin v. Lake Mohawk Property Owner's Assn.*, 7th Dist. Carroll No. 04 CA 815, 2005-Ohio-7062, ¶ 19.

{¶ 23} Civ.R. 41(B)(2) specifically provides the trial court may consider both the law and the facts. *Johnson v. Keith*, 12th Dist. Clermont No. CA2012-04-032, 2013-Ohio-451, ¶

17. In turn, in ruling on the motion, "the trial judge, as the trier of fact * * * weighs the evidence and actually determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard." *Webb v. C & J Properties, L.L.C.*, 12th Dist. Butler No. CA2010-01-016, 2010-Ohio-3818, ¶ 13, quoting *Tillman v. Watson*, 2d Dist. Champaign No. 06-CA-10, 2007-Ohio-2429, ¶ 11. In other words, "[i]f, after evaluating the evidence, a trial court finds the plaintiff has failed to meet her burden of proof, then the trial court may enter judgment in the defendant's favor." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. Franklin No. 12AP-999, 2013-Ohio-5140, ¶ 104. A trial court's ruling on a Civ.R. 41(B)(2) motion may not be disturbed on appeal unless such judgment is "erroneous as a matter of law or against the manifest weight of the evidence." *Johnson* at ¶ 18, citing *Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348, ¶ 35 (12th Dist.).

**The Magistrate's Decision Granting Rapier's Motion to Dismiss was Not "Premature"**

**{¶ 24}** Initially, OVABC claims the magistrate erred by issuing its decision on Rapier's Civ.R. 41(B)(2) motion to dismiss without first ruling on the admissibility of OVABC's exhibits. According to OVABC, "[a]t least one Ohio court has observed the requirement of admitting a plaintiff's exhibits prior to a Civ.R. 41(B)(2) dismissal." In support of this claim, OVABC cites *Martin v. Lake Mohawk Property Owner's Assn.*, a case in which the Seventh District Court of Appeals made a general statement finding "[t]he plaintiffs' exhibits were admitted, and the defense successfully moved for the Civ.R. 41(B)(2) dismissal." *Id.*, 2005-Ohio-7062 at ¶ 71.

**{¶ 25}** However, after reviewing the Seventh District's decision in *Martin*, we find this statement serves as nothing more than a general description of the events that transpired before the trial court, not a "requirement" precedent to ruling on a Civ.R. 41(B)(2) motion to dismiss. This is even more apparent when this general statement is taken in context of the entire paragraph, which states:

> After Counsel asked a few more questions about the restriction, the court asked the defense if they had any questions of the realtor. The Mizeriks' attorney presented an exhibit which was an appraisal of the Martin's house from the county auditor's office and tried to have the realtor read the home's appraised value. However, the court sua sponte stated that the question was irrelevant. (11/19/04 Tr. 124). The court then recessed at 12:07 and resumed at 1:10 p.m. The plaintiffs' exhibits were admitted, and the defense successfully moved for the Civ.R. 41(B)(2) dismissal.

OVABC's reliance on this general statement advanced by the Seventh District in *Martin* is clearly misplaced and simply cannot serve as support for any alleged error in the magistrate's decision granting Rapier's motion to dismiss.

{¶ 26} As noted above, pursuant to the plain language found in Civ.R. 41(B)(2), once the defendant moves for involuntary dismissal, the trial court, as trier of the fact, "may then determine [the facts] and render judgment against the plaintiff or may decline to render any judgment until the close of all of the evidence." Nowhere within this rule does it specifically require the trial court to rule on the admissibility of evidence prior to making such a decision, nor have we found any case law that would support such a contention. Therefore, while it may have been more prudent for the magistrate to rule on the admissibility of OVABC's exhibits prior to issuing its decision granting Rapier's motion, we simply cannot say that the court's decision was in error. Accordingly, OVABC's first argument is without merit and overruled.

**The Trial Court Properly Conducted a Civ.R. 53(D)(4)(d) Independent Review**

{¶ 27} Next, OVABC argues the trial court erred by failing to conduct an independent review of the magistrate's decision as required by Civ.R. 53(D)(4)(d).

{¶ 28} Pursuant to Civ.R. 53(D)(4)(d), in ruling on timely-filed objections to a magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues

and appropriately applied the law." However, the fact that the trial court does not cite any specific portion of the transcript or exhibit does not demonstrate that the court failed to conduct an independent review of the objected matters as required by Civ.R. 53(D)(4)(d). *Moellering Industries, Inc. v. Nalagatla*, 12th Dist. Warren No. CA2012-10-104, 2013-Ohio-3995, ¶ 10. "While citing such material would tend to demonstrate that the trial court conducted the requisite independent review, there is no requirement in Civ.R. 53(D)(4)(d) that the trial court do so." *Hampton v. Hampton*, 12th Dist. Clermont No. CA2007-03-033, 2008-Ohio-868, ¶ 17. Therefore, unless the appellant affirmatively demonstrates that the trial court failed to perform its duty under Civ.R. 53(D)(4)(d) to conduct an independent review, an appellate court must presume the regularity of the proceedings below. *Barrientos v. Barrientos*, 196 Ohio App.3d 570, 2011-Ohio-5734, ¶ 5 (3d Dist.); *Hartt v. Munobe*, 67 Ohio St.3d 3, 6 (1993).

{¶ 29} OVABC claims that because the trial court summarily dismissed its objections to the magistrate's decision, "no review of any objection happened here." The trial court, however, held a hearing on the matter during which it heard arguments from both parties regarding each of OVABC's objections. Moreover, as part of its decision affirming and adopting the magistrate's decision, the trial court specifically stated that it "carefully reviewed the decision of the magistrate, the pleadings of the parties and the transcript of the proceedings." *See Mandzak v. Graves*, 12th Dist. Butler No. CA2009-06-173, 2010-Ohio-595, ¶ 8. The fact that the trial court did not specifically cite to any exhibit, without more, does not demonstrate that the court failed to conduct an independent review as to the objected matters. *Hampton* at ¶ 17. Therefore, we find OVABC has not demonstrated that the trial court failed to conduct an independent review under Civ.R. 53(D)(4)(d). Accordingly, OVABC's second argument is also without merit and overruled.

**The Trial Court's Decision Granting Rapier's Motion to Dismiss was Proper**

**{¶ 30}** Finally, OVABC argues the trial court's decision finding it failed to present evidence that the projects were subject to Ohio's prevailing-wage law was against the manifest weight of the evidence.

**{¶ 31}** As noted above, a trial court's ruling on a Civ.R. 41(B)(2) motion may not be disturbed on appeal unless such judgment is "erroneous as a matter of law or against the manifest weight of the evidence." *Johnson*, 2013-Ohio-451 at ¶ 18. The Ohio Supreme Court clarified the standard of review regarding whether a trial court's decision in a civil matter is against the manifest weight of the evidence in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179. As the Ohio Supreme Court stated in *Eastley*:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."

*Id.* at ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 32}** In a manifest weight analysis, "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark*, 12th Dist. Warren Nos. CA2011-06-063 and CA2011-06-064, 2012-Ohio-3130, ¶ 67, citing *Thompkins*, 78 Ohio St.3d. at 387. In making this determination, "an appellate court generally must defer to the fact-finder's credibility determinations." *In re P.A.R.*, 4th Dist. Scioto No. 13CA3550, 2014-Ohio-802, ¶ 16, citing *Eastley* at ¶ 21.

**{¶ 33}** Ohio's prevailing-wage laws are codified in R.C. Chapter 4115. "These provisions generally require contractors and subcontractors for public-improvement projects

to pay laborers and mechanics the 'prevailing wage' in the locality where the project is to be performed." *Ohio Valley Associated Builders & Contrs. v. Indus. Power Sys., Inc.*, 190 Ohio App.3d 273, 2010-Ohio-4930, ¶ 14 (6th Dist.), citing *State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199, ¶ 10. "[T]he legislative intent of the prevailing-wage law in R.C. Chapter 4115 is to 'provide a comprehensive, uniform framework for * * * worker rights and remedies vis-à-vis private contractors, subcontractors and materialmen engaged in the construction of public improvements in this state.'" *Id.*, quoting *Bergman v. Monarch Constr. Co.*, 124 Ohio St.3d 534, 2010-Ohio-622, ¶ 10. The law's primary purpose "'is to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.'" *Bergman*, 2010-Ohio-622 at ¶ 10, quoting *State ex rel. Evans v. Moore*, 69 Ohio St.2d 88, 91 (1982).

**{¶ 34}** Pursuant to R.C. 4115.10(A), "[n]o person, firm, corporation, or public authority that constructs a public improvement with its own forces, the total overall project cost of which is fairly estimated to be more than the amounts set forth in division (B) of section 4115.03 of the Revised Code, * * * shall violate" the prevailing-wage laws. In this case, the trial court granted Rapier's Civ.R. 41(B)(2) motion to dismiss after it found OVABC had failed to prove the prevailing-wage laws were even applicable to the various construction projects on the Miami University campus. Specifically, the trial court found OVABC provided no evidence that Miami University was a "public authority" as defined by R.C. 4115.03(A), nor any evidence that the construction projects were "public improvements" constructed pursuant to a "public contract" under R.C. 4115.03(C). The trial court also found OVABC provided no evidence establishing the cost of construction for any of the construction projects under R.C. 4115.03(B).

**{¶ 35}** OVABC claims the trial court's decision was in error and against the manifest

weight of the evidence based on the alleged "judicial admissions" contained in Rapier's answer to its refiled complaint. For instance, in paragraph 11 of its answer, Rapier agreed with OVABC's allegation that Miami University was a "public authority" as defined by R.C. 4115.03(A). In addition, when responding to OVABC's general allegations provided in paragraph 20 of its complaint that Rapier was obligated to pay its employees the prevailing wage and otherwise comply with the prevailing-wage laws, Rapier explicitly stated:

> The allegations contained in Paragraph 20 are hereby ADMITTED to the extent that the Project was subject to Ohio's prevailing wage law and that Rapier complied with Ohio law regarding the Project. Rapier DENIES any remaining allegations contained in Paragraph 20 of OVABC's Complaint.

{¶ 36} A judicial admission is a "formal statement, made by a party or a party's counsel in a judicial proceeding, that act[s] as a substitute for legal evidence at trial." *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 12, quoting *Haney v. Law*, 1st Dist. Hamilton No. C-070313, 2008-Ohio-1843, ¶ 7. However, to be binding, "the admission must be of a material and competent fact, not merely a legal conclusion or statutory definition." *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Kingfish Elec., L.L.C.*, 6th Dist. Williams No. WM-11-006, 2012-Ohio-2363, ¶ 20. In other words, "[w]hile a judicial admission may arise from a statement of material and competent fact, no such admission results from a statement of a legal conclusion." *In re Regency Village Certificate of Need Application*, 10th Dist. Franklin No. 11AP-41, 2011-Ohio-5059, ¶ 32, citing *Faxon Hills Constr. Co. v. United Broth. of Carpenters & Joiners of America*, 168 Ohio St. 8 (1958), paragraph one of the syllabus. Therefore, "[p]leadings containing admissions against interest are admissible as evidence against the pleader, as long as the admissions involve material and competent facts." *Williams* at ¶ 12.

{¶ 37} Rapier's answer to OVABC's complaint contains a number of admissions of material and competent fact. For instance, Rapier explicitly admitted to submitting bids on

the various projects for the purpose of securing a contract with Miami University. This certainly constitutes a material fact that serves as a binding judicial admission. However, Rapier's answer admitting that Miami University is a "public authority" as defined by R.C. 4115.03(A), as well as its general averment that Ohio's prevailing-wage laws were applicable to the various construction projects, are legal conclusions that cannot be considered a binding judicial admission on Rapier's behalf. *See, e.g., Kingfish Elec.*, 2012-Ohio-2363 at ¶ 18-20 (finding admission in employer's answer that certain individuals were "employees" under Ohio's prevailing-wage law was not binding as such admission was to a legal conclusion). This is particularly true given OVABC's own pretrial statement, which did not reference Rapier's answer when asked to identify those facts that were conclusively established by admissions in the pleadings. Rapier's answer, therefore, cannot be considered as a binding "judicial admission."

{¶ 38} Nevertheless, although we find Rapier's answer cannot be construed as a binding "judicial admission," the record is clear that whether Ohio's prevailing-wage laws applied was never in dispute. In fact, neither party ever raised this issue during the five years this case has been pending, nor was this issue ever raised by either party during the bench trial. In addition, the record contains an affidavit from Dan Rapier, the acting president of Rapier, wherein he specifically stated that the various projects were subject to the prevailing-wage laws. Rapier's counsel even admitted during oral argument before this court that the prevailing-wage laws applied to the various construction projects at issue here. Therefore, because there is no dispute between the parties that Ohio's prevailing-wage laws apply, we find the trial court's decision otherwise was in error. Such a decision, however, is explicitly limited to the facts and circumstances of this case.

{¶ 39} Yet, even though we find the trial court's decision was improper, it is well-established that we are required to affirm a trial court's judgment that achieves the "right

result for the wrong reason," because such an error is not considered prejudicial. *French v. New Paris*, 12th Dist. Preble No. CA2010-05-008, 2011-Ohio-1309, ¶ 42, citing *Johnson v. Am. Family Ins.*, 160 Ohio App.3d 392, 2005-Ohio-1776, ¶ 29 (6th Dist.). Such is the case here. Therefore, although we find the court's decision finding the various projects were not subject to Ohio's prevailing-wage laws was in error, we find the record is devoid of any evidence indicating Rapier actually "violated" the law as that term has been defined by this court.

{¶ 40} As this court has stated previously, "a 'violation' for purposes of the prevailing wage statute requires the employer to intentionally violate the prevailing wage laws." *Internatl. Brotherhood of Electrical Workers, Loc. Union No. 575 v. Settle-Muter Elec., L.T.D.*, 12th Dist. Fayette No. CA2012-02-003, 2012-Ohio-4524, ¶ 19; *see also State ex rel. Associated Builders & Contrs. of Cent. Ohio v. Franklin Cty. Bd. of Commrs.*, 125 Ohio St.3d 112, 2010-Ohio-1199, ¶ 29. "[T]he express language in the prevailing wage laws supports this understanding as R.C. 4115.13(C) allows an exception for unintentional violations of the statute." *Id.* Pursuant to R.C. 4115.13(H), an "intentional violation" means "a willful, knowing, or deliberate failure to comply with any provision of sections 4115.03 to 4115.16 of the Revised Code[.]" This includes, but is not limited to, (1) an intentional failure to submit reports as required under division R.C. 4115.071(C) or knowingly submitting false or erroneous reports; (2) an intentional misclassification of employees for the purpose of reducing wages; or (3) an intentional misclassification of employees as independent contractors or as apprentices, among others. *See* R.C. 4115.03(H)(1)-(6).

{¶ 41} As part of this assignment of error, OVABC does not offer any argument as to how Rapier actually "violated" Ohio's prevailing-wage laws. Rather, these arguments are contained in its general discussion regarding the trial court's decision to award Rapier attorney fees. As part of that assignment of error, which we address more fully below,

OVABC argues the testimony elicited at trial evidences several "admitted violations" of the prevailing-wage laws. For instance, OVABC alleges Rapier violated R.C. 4115.07 by failing to retain full and accurate payroll records for a period of one year following the completion of the various construction projects, as well as certifying the payroll reports without actually reading them in violation of R.C. 4115.071. OVABC also argues that "Rapier recorded time on the * * * projects that were doing 'good,' even if the employee did not work on that project."

{¶ 42} At the outset, we note that besides the properly excluded Miami University documents, OVABC never moved for the admission of its exhibits, nor did it proffer any of its exhibits to the magistrate at trial. OVABC did not even offer its exhibits to the trial court during its hearing on OVABC's objections to the magistrate's decision. As the appellant in this matter, it is OVABC's obligation to ensure that the record is properly established to support its allegations on appeal. This includes proffering evidence not admitted at trial.

{¶ 43} We also note that OVABC has taken great liberties in construing the testimony to support its contention that Rapier testified to several "admitted violations." For example, as it relates to OVABC's allegations that Rapier certified the payroll reports it submitted to Miami University without actually reading them, Dan Rapier specifically testified that he did read the reports. In fact, when pressed on this issue, Dan Rapier testified that "I look at them to the best of my knowledge, and I sign them to be complete." This hardly rises to the level of an "admitted violation" as OVABC asserts.

{¶ 44} In addition, as it relates to OVABC's allegations that Rapier would record time on "projects that were doing 'good,' even if the employee did not work on that project," Dan Rapier specifically testified that was simply not true. As Dan Rapier testified:

> Q: Would you ever take an employee's time from a job that was doing well and put it on a job that was going bad or vice versa?
>
> A: Oh, no.

Continuing, the following exchange occurred:

> Q: So when you testified [at your deposition] that you would take guys' time and put it on a job that was going good, maybe they didn't work on the job, I took that to mean that sometimes you would put an employee's time on one job even though they didn't work there because that job was doing well or not doing well?
>
> A: I meant when they're not working on the job, they are working in the shop to help the job.
>
> Q: So what did you mean by maybe they didn't work on the job.
>
> A: That's what I mean. They worked at the shop.

Again, this hardly rises to the level of an "admitted violation" as OVABC suggests.

{¶ 45} OVABC also argues that Rapier admitted to violating R.C. 4115.07 by allowing its employees to "bank time." Pursuant to that statute, and as relevant here:

> All contractors and subcontractors required by sections 4115.03 to 4115.16 of the Revised Code, and the action of any public authority to pay not less than the prevailing rate of wages shall make full payment of such wages in legal tender, without any deduction for food, sleeping accommodations, transportation, use of small tools, or any other thing of any kind or description.

According to OVABC, this provision in R.C. 4115.07 prohibits contractors subject to the prevailing-wage laws from "'pay[ing]' hours worked on the project with paid time off or banked time." OVABC has provided us with no case law to support this contention, nor has our own research uncovered any case law addressing this issue as it relates to R.C. 4115.07.

{¶ 46} Nevertheless, even assuming OVABC's allegations are true, the record is devoid of any evidence to establish this "admitted violation" in regards to the various construction projects at issue here. As Dan Rapier testified:

> Q: Can you explain to the Court what "banked time" means at Rapier Electric?
>
> A: At times, guys have held their time to go on vacation and taken off and went on vacation.
>
> Q: So if they would work one week, not get paid and take time

off later to make up for it; is that correct?

A: Yes, my own foreman did it.

Q: Does that ever happen on prevailing wage jobs?

A: To my knowledge, yes.

Q: During the week that the employee worked but was not paid, would they show up on your certified payroll reports?

A: No.

Q: During the week that they were paid out for that time, would they show as having worked on your certified payroll reports?

A: Yes.

{¶ 47} As can be seen, this testimony was not specific to any of the various construction projects at issue. Rather, Dan Rapier's testimony generally referenced "prevailing wage jobs." It is undisputed that Rapier has contracted for several other "prevailing wage jobs," including those that OVABC had voluntarily dismissed from this suit prior to the start of trial. Rapier is not on trial for every job that it has ever contracted, but only those five projects on the Miami University campus specifically referenced as part of OVABC's refiled complaint. Without providing any testimony directly related to the various construction projects at issue here, this simply cannot rise to the level of an "admitted violation" as OVABC would like this court to believe.

{¶ 48} OVABC also cites the testimony from Naomi Rapier, part owner and wife of Dan Rapier, who enters payroll in Rapier's computer system. However, just like Dan Rapier's testimony above, the testimony elicited from Naomi Rapier did not reference any of the various construction projects at issue here. Instead, this testimony was in reference to a hypothetical situation in which the words "banked time" appeared on an employee's time sheet. OVABC also ignores Naomi Rapier's previous testimony, wherein she explicitly stated that she was not familiar with Rapier's "banked time" practice, that she did not know what the

term "banked time" meant, and that she "do[es] nothing with bank time." Naomi Rapier's testimony also falls well short of establishing an "admitted violation."

{¶ 49} Regardless, even if we were to find the record supported OVABC's allegations, which we do not, there is nothing in the record to indicate that Rapier's alleged "violations," if any, were intentional as opposed to merely a mistake or inadvertence. As noted above, this court has determined that "a 'violation' for purposes of the prevailing wage statute requires the employer to intentionally violate the prevailing wage laws." *Settle-Muter Elec.*, 2012-Ohio-4524 at ¶ 19. Pursuant to R.C. 4115.13(H), an "intentional violation" means "a willful, knowing, or deliberate failure to comply with any provision of sections 4115.03 to 4115.16 of the Revised Code[.]" There is nothing in the record to indicate Rapier ever acted in a manner that was willful, knowing, or deliberate so as to constitute a "violation" of the prevailing-wage laws. Instead, the record reveals that Rapier complied with the prevailing-wage laws to the best of its ability.

{¶ 50} OVABC, however, argues our decision in *Settle-Muter Elec.* requiring an "intentional violation" of the prevailing-wage laws should be limited to the facts of that case. Our holding in *Settle-Muter Elec.* finding a "violation" under Ohio's prevailing-wage law requires the employer to "intentionally violate" the prevailing-wage laws was not so limited. Rather, we reached this conclusion after reviewing the statutory language of the prevailing-wage laws. Our decision was also based on the Ohio Supreme Court's decision in *State ex rel. Associated Builders & Contrs. of Central Ohio v. Franklin Cty. Bd. of Commrs.*, which found the term "violation" generally refers to "the situation in which the director makes a formal finding that a contractor or subcontractor intentionally violated the prevailing-wage laws, and all appeals are exhausted." *Id.*, 2010-Ohio-1199 at 29. Therefore, while the facts of that case are certainly instructive, some proof of a "violation," i.e., a violation that was wilful, knowing or deliberate, is still required to establish a viable cause of action. No such

evidence was presented here.

{¶ 51} In analyzing a statute or regulation, the paramount goal is to ascertain and give effect to the legislature's intent in enacting the statute. *Internatl. Bhd. of Electrical Workers, Local Union No. 8 v. Vaughn Industries, Inc.*, 156 Ohio App.3d 644, 2004-Ohio-1655, ¶ 57 (6th Dist.), citing *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349 (10th Dist.1996). As noted above, the intent behind the prevailing-wage laws is "'to support the integrity of the collective bargaining process by preventing the undercutting of employee wages in the private construction sector.'" *Bergman*, 2010-Ohio-622 at ¶ 10, quoting *Evans*, 69 Ohio St.2d at 91. Absolutely no evidence was presented at trial indicating any of Rapier's employees were not paid the prevailing wage owed to them.[1] Moreover, although Rapier readily admits that its bookkeeping methods and general organization left much to be desired, based on the facts and circumstances of this case, we find this evidence, standing alone, is insufficient to constitute a "violation" of Ohio's prevailing wage laws as defined by this court. Therefore, while we find alternative grounds to grant the motion, the trial court's decision granting Rapier's Civ.R. 41(B)(2) motion to dismiss was nevertheless proper. Accordingly, OVABC's first assignment of error is overruled.

{¶ 52} Assignment of Error No. 3:

{¶ 53} THE TRIAL COURT ABUSED ITS DISCRETION BY AWARDING ATTORNEY FEES.

{¶ 54} In its third assignment of error, OVABC argues the trial court abused its discretion by awarding Rapier $144,986.27 in attorney fees pursuant to R.C. 4115.16(D).

{¶ 55} In general, the law in Ohio requires each party bear its own attorney fees and

---

1. Although not introduced at trial, we note that as part of its previously submitted motion for summary judgment, Rapier included affidavits from seven of its employees that specifically stated they were paid "at or which exceeded the prevailing wage" for their position when working on the various construction projects on the Miami University campus.

costs during the course of litigation. *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶ 17, citing *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179 (1976). However, there are a number of exceptions to this general rule. Specifically, "attorney fees may be awarded when a statute * * * provides for the losing party to pay the prevailing party's attorney fees." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7. This includes the dictates of R.C. 4115.16(D), which provides, in pertinent part, the following:

> In the event the court finds that no violation has occurred, the court may award court costs and fees to the prevailing party, other than to the director or the public authority, where the court finds the action brought was unreasonable or without foundation, even though not brought in subjective bad faith.

{¶ 56} By using the term "may," the General Assembly "vested discretion in the court so that before it can award fees to a prevailing employer, it must first use its discretion to find that the employee's claim was unreasonable or brought without foundation." *Bergman v. Monarch Constr. Co.*, 12th Dist. Butler No. CA2008-02-044, 2009-Ohio-551, ¶ 80, reversed on other grounds, 124 Ohio St.3d 534, 2010-Ohio-622. In other words, when the court finds no violation of the prevailing-wage laws, such as the case here, "the decision to award such fees and the amount of such fees is within the sound discretion of the trial court." *United Bhd. of Carpenters & Joiners of Am., Local Union No. 1581 v. Fitzenrider*, 3d Dist. Henry No. 7-11-20, 2012-Ohio-4653, ¶ 46, citing *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985). Thus, a trial court's decision to award attorney fees when no violation has occurred is to be judged based on an abuse of discretion standard. *W. Unity ex rel. Beltz v. Merillat*, 169 Ohio App.3d 71, 2006-Ohio-5105, ¶ 11 (6th Dist.).

{¶ 57} Under this assignment of error, OVABC initially argues the trial court abused its discretion by awarding Rapier attorney fees because its suit was not unreasonable or without

foundation. OVABC also argues the trial court abused its discretion by awarding Rapier attorney fees because it failed to articulate a sound reasonable basis for such an award. However, the record in this case reveals that OVABC's lawsuit against Rapier was just one of over 100 filed throughout the state against small contractors who bid on public works projects in its attempt to recover hundreds of thousands of dollars in attorney fees for what amount to nothing more than minor technical violations. In fact, OVABC itself sought to recover over $192,000 in attorney fees based on over 1080 hours of billable time before trial even began.

{¶ 58} The trial court found, and we agree, that OVABC, by filing this lawsuit against Rapier, was "not acting for the greater good of the citizens of Ohio, but, rather, is a well organized attempt to abuse the legal system by targeting small business owners and forcing them to pay relatively large settlements disproportionate to the conduct involved." Any of the alleged "violations," none of which were supported by in the record, could have easily been resolved administratively, rather than by five years of protracted litigation. Therefore, we find OVABC's decision to file this lawsuit was, at the very least, unreasonable or without foundation. In making this determination, we stress that R.C. 4115.16(D) is clearly written in the disjunctive, and serves as just one of the many particular "actions" that would entitle contractors like Rapier to recover attorney fees. Accordingly, the trial court's decision to award Rapier attorney fees incurred in defense of this matter was not an abuse of discretion.

{¶ 59} OVABC also argues the trial court abused its discretion by failing to properly apply the "lodestar" method in calculating the amount of attorney fees awarded to Rapier. When calculating the amount of attorney fees, a trial court is guided by a two-step determination. *Lamar Advantage GP Co. v. Patel*, 12th Dist. Warren No. CA2011-10-105, 2012-Ohio-3319, ¶ 46. "The court should first calculate the 'lodestar' amount by multiplying the number of hours reasonably expended by a reasonable hourly rate and, second, decide whether to adjust that amount based on the factors listed in Prof.Cond.R. 1.5(a)." *Id.*, citing

*Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143 (1991), syllabus (applying the predecessor to Prof.Cond.R. 1.5[a]). "Those factors include the time and labor required; the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; the amount involved and the results obtained; the experience, reputation, and ability of the lawyer or lawyers performing the services; and whether the fee is fixed or contingent." *Id.*, citing Prof.Cond.R. 1.5(a).

{¶ 60} Here, OVABC claims the trial court abused its discretion by awarding Rapier $144,986.27 in attorney fees because Rapier's own expert testified that some of the charged fees were excessive or unreasonable. Where a court is empowered to award attorney fees by statute, "[u]nless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Mike Castrucci Ford Sales, Inc. v. Hoover*, 12th Dist. Clermont No. CA2009-03-016, 2009-Ohio-4823, ¶ 11, citing *Bittner* at 146, quoting *Brooks*, 23 Ohio App.3d at 91. In making this determination, the trial court has an "infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Id.*

{¶ 61} After a thorough review of the record, we cannot say the amount of attorney fees awarded to Rapier shocks the conscience so as to require reversal given the complexity of the issues involved and the lengthy protracted procedural history of this case. However, following the hearing on this matter, and as a result of its own expert's testimony, Rapier reduced its requested attorney fees to $139,986.27. Because Rapier itself requested a reduction in its attorney fee award to $139,986.27, we find the trial court's decision awarding Rapier $144,986.27 in attorney fees was in error. The trial court's decision is modified to correspond to the amount of attorney fees actually requested by Rapier. OVABC's third assignment of error is sustained as it relates to the amount of attorney fees awarded only. The judgment of the trial court is, in all other respects, affirmed.

{¶ 62} Judgment affirmed as modified.

RINGLAND, P.J., and M. POWELL, J., concur.