[Cite as *Ward v. Rippe*, 2017-Ohio-5505.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

RYAN WARD,                                     :

    Plaintiff-Appellee,                     :          CASE NO.  CA2016-10-067

                                    :          O P I N I O N
  - vs -                                    6/26/2017

                                      :

BRITTANY (WARD) RIPPE,                   :

    Defendant-Appellant.                   :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 2012 DRA 1756

Andrew G. Ice, 4030 Mt. Carmel Tobasco Road, Suite 127, Cincinnati, Ohio 45255, for plaintiff-appellee

Mark C. Eppley, 337 York Street, Newport, KY 41071, for defendant-appellant

**HENDRICKSON, P.J.**

{¶ 1}  Defendant-appellant, Brittany Rippe ("Mother"), appeals from the decision of the Clermont County Court of Common Pleas, Domestic Relations Division, which designated her ex-husband, plaintiff-appellee, Ryan Ward ("Father"), as sole residential parent and legal custodian of their son.  For the reasons articulated below, we affirm the decision of the domestic relations court.

{¶ 2}   Mother and Father married in March 2012.  Their son was born in September 2012.  In December 2012, Father filed for divorce.  In February 2013, the court issued a decree of divorce.  The decree designated Mother residential parent and legal custodian of the son.  The decree further incorporated a separation agreement wherein Father had parenting time with the son every other weekend from Thursday to Monday.

{¶ 3}   In June 2015, Father moved the court for a modification of parental rights.  Father asked for custody of the son, or alternatively, a shared parenting plan.  Father alleged that although the decree allotted him two long weekend visits a month, he was caring for the child at least half of the month.  Father further alleged that Mother was living with the son in unsanitary conditions and that Father observed feces on the floor of Mother's home.  Father additionally alleged that Mother's lifestyle was not in the son's best interest.

{¶ 4}   The court held evidentiary hearings over three days.  The first hearing occurred in October 2015, where the factual issues were limited to whether a change of circumstances occurred.  The final two hearings days occurred in May 2016, and addressed whether a change in parental rights was in the son's best interest.  The parties stipulated that the court could consider the evidence introduced at the October hearing in determining the son's best interest.  Mother, Father, and Mother's ex-husband – Nicholas Lewis – testified.

{¶ 5}   Mother testified that she was raising the son as well as her daughter, who was born of her marriage with Lewis.  Mother and Lewis divorced in 2009.  Mother conceded having several romantic relationships with men in late 2014 and early 2015.  The men lived out of town and Mother would take her son and daughter along with her for overnight stays at the men's homes.  Mother posted a message to social media the morning following one of these visits where she said "I'm not kidding, me [and the children] pulled in the driveway after going to the grocery store and we all must have been absolutely exhausted because I just woke up 45 minutes later and we're still sitting in the car and the kids are still asleep.  How

does that even happen?"

{¶ 6} Father's counsel confronted Mother with a social media post in which she indicated that people would "see me on the news here soon" and that she could not "mentally handle" her children that day. Mother confirmed that she made the comments after having had her son for one day after Father had the son for ten days. Father's counsel also confronted Mother with a picture posted to a social media website, which depicted Mother's children standing next to a teenage girl, who was in her underwear. Mother identified the teenager as her father's girlfriend's daughter. Mother agreed that the teenager was not an appropriate person to be babysitting her children and denied that she ever allowed the teenager to babysit her children. However, Lewis testified that he picked up his daughter on one occasion and found the teenager babysitting the children. Mother claimed that the reason that Father was parenting their son more than what was provided for in the decree was because she was in school and Father was assisting her.

{¶ 7} Mother testified that she had the son tested for autism but that the results came back negative. She next had concerns that the son was not developing speech skills and so she enrolled him in speech therapy. Mother testified that her son had behavior issues at her home and was biting his hand. So Mother enrolled the son in behavior therapy.

{¶ 8} Father testified that he did not believe that the son was suffering from behavioral issues and that the son did not exhibit the behaviors that Mother claimed when Father was parenting him. Father indicated that Mother would not include him in any decision-making with respect to caregivers and that if Father angered Mother she would take away the additional parenting time that he was receiving with his son.

{¶ 9} Father testified that he went to Mother's home to pick up his son for a visit in February 2015. He asked Mother if he could use her bathroom and she allowed him inside the home. Father then took out his cell phone and began filming the conditions inside the

home including what appeared to be dog feces on the floor of the children's room.

{¶ 10}   Father's counsel confronted Mother about the conditions at the home with still-frame photos from Father's video.  The pictures depict an extremely cluttered home, with clothes, children's toys, miscellaneous items strewn about, and feces on the floor in one room.  Mother testified that the pictures did not depict the home in its usual state.  In discovery responses, which were introduced at the hearing, Mother indicated that the reason for the clutter was that "[p]hotos were taken during a time when work was being done at the house and clothing and toys were being sorted for donation to St. Vincent DePaul."  With respect to the feces, Mother testified, "[i]t is some type of feces.  [Father's] parents live on a farm and [Father] also has dogs.  I can't confirm or deny if he came in and brought [the feces] with him and then took pictures."

{¶ 11}   Lewis testified that he had a shared parenting arrangement with respect to his and Mother's daughter.  Lewis estimated that he had been in Mother's residence more than 50 times since 2013.  He had seen dog feces in her home and that dog feces were present "more often than not." Lewis stated that the pictures depicting a cluttered home accurately represented the condition of the home as he knew it.  Lewis explained that Mother told him that the reason the home was always cluttered was because she was never home to clean it.

{¶ 12}   The magistrate issued a decision concluding that it was in the son's best interest to designate Father as the son's residential parent and legal custodian.  The magistrate concluded that Mother's decision-making resulted in her life being hectic and that the advantages of placing the child primarily in Father's stable environment outweighed any harm the son might suffer from a change of environment.  The magistrate further noted that Mother lacked credibility with respect to her explanation for the unsanitary conditions in her home.  The magistrate granted Mother parenting time on alternating weekends.

{¶ 13}   Mother filed objections to the magistrate's decision.  Sixteen days after the

transcripts of the proceedings were filed, Mother filed supplemental objections. The court overruled Mother's objections and declined to rule on Mother's supplemental objections because they were untimely filed pursuant to the local rules of the court.

{¶ 14} Mother raises three assignments of error in this appeal.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ARRIVING AT FINAL JUDGMENT BY ADOPTING THE DECISION OF THE MAGISTRATE ON PARENTING MODIFICATION WITHOUT UNDERTAKING A *DE NOVO* DETERMINATION / INDEPENDENT REVIEW OF DEFENDANT / APPELLANT'S OBJECTIONS AND AMENDED / SUPPLEMENTAL OBJECTIONS AS REQUIRED BY OHIO CIVIL RULE 53 AND CASE LAW.

{¶ 17} Mother primarily argues that the court did not engage in an independent review because it refused to address her supplemental objections. Mother also generally argues that the court did not independently review her initial objections. We address the supplemental objections first.

{¶ 18} Mother timely filed objections to the magistrate's decision on June 13, 2016. Mother also requested leave to supplement the objections after she had an opportunity to review the transcript of the proceedings. On June 27, 2016, the court issued an entry stating that Mother failed to order a transcript of the proceedings before the magistrate and that the local rules required transcripts to be filed within 30 days of the filing of objections. The court thus notified Mother that she must file a transcript on or before July 13, 2016. The entry also responded to Mother's request concerning the filing of supplemental objections. It noted that the local rules provided that Mother could file supplemental objections within 14 days of the filing of the transcript.

{¶ 19} Mother immediately filed a praecipe for a transcript. However, Mother only

requested a transcript of the two hearing dates in May 2016. On July 8, 2016, the court issued an entry indicating that the court reporter had contacted it indicating additional time was needed to prepare the May hearing transcript. Accordingly, the court extended Mother's deadline to file the transcript to July 18, 2016.

{¶ 20} On July 15, 2016, the transcript of the May hearing dates was filed. On July 26, 2016, Mother filed a request for an extension of time to file her supplemental objections. Mother explained that she had retained new counsel who needed additional time to review the transcript of proceedings. The court granted Mother's request for an extension and set a new deadline of August 25, 2016 to file supplemental objections.

{¶ 21} On August 17, 2016, Father moved the court to dismiss Mother's objections for her failure to file a transcript of the change of circumstances hearing in October 2015. The court denied Father's motion and found that Mother's failure to request a transcript of the October hearing date was an unintentional oversight. The court issued an entry allowing Mother to file the October transcript on or before September 2, 2016. The court's entry again stated that Mother must file her supplemental objections within 14 days of the filing of the complete transcript. The entry indicated that the court would not grant any further extensions of time.

{¶ 22} On August 31, 2016, the transcript of the October 2016 hearing date was filed. Accordingly, Mother had until September 14, 2016 in which to timely file her supplemental objections. Mother filed her supplemental objections on September 16, 2016. On September 19, 2016, the court issued its decision and entry on Mother's objections. The court indicated that it would not rule on Mother's supplemental objections because they were not timely filed.

{¶ 23} Civ.R. 53(D)(4)(d) provides "[i]f one or more objections to a magistrate's decision are *timely* filed, the court shall rule on those objections. In ruling on objections, the

court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. * * *."  (Emphasis added.)

{¶ 24}   With respect to the time requirements for filing supplemental objections, Civ.R. 53(D)(3)(b)(iii) states: "[i]f a party files timely objections prior to the date on which a transcript is prepared, the party may seek leave of court to supplement the objections."  The local rules of the Clermont County Common Pleas Court, Domestic Relations Division, provide that "[a] party has 14 days following the filing of the complete transcript to file * * * supplemental objections * * *."  Loc.R. DR 39(C).

{¶ 25}   Mother does not dispute that her supplemental objections were untimely. Instead, she argues that the court failed to independently review the magistrate's decision by not reviewing the supplemental objections.  However, Civ.R. 53(D)(4)(d) only requires a court to rule on timely objections.  Therefore, this argument lacks merit.

{¶ 26}   Mother suggests that the reason her objections were untimely was "as a result of the trial court failing to provide notification of the transcript being filed."  However, the record belies this claim.  After the court filed its decision and entry, Mother moved the court to reconsider its refusal to rule on the supplemental objections.  Specifically, Mother explained that her failure to timely file was because she misinterpreted the court's entry setting the deadline to file the October hearing transcript.

{¶ 27}   In response, the court treated Mother's motion for reconsideration as a request for relief from judgment under Civ.R. 60(B).  The court found that mother's failure to file the transcript was excusable neglect.  However, the court concluded that mother's supplemental objections did not present a meritorious claim and therefore denied Mother's motion. Mother did not assign error to the court's Civ.R. 60(B) ruling.

{¶ 28}   With respect to the timely filed objections, Mother argues that the brevity of the

court's decision indicates that it failed to engage in an independent review. Mother has the burden of affirmatively demonstrating that the court failed to engage in an independent review. *Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 28. Citation to portions of a transcript within a court's decision can indicate that the court engaged in the independent review required by Civ.R. 53(D)(4)(b). *Id.*

{¶ 29} There is nothing in the record to indicate that the court failed to engage in an independent review of the proceedings before the magistrate. The court's entry states that the court reviewed the magistrate's decision, the objections, and the transcript. The entry also cites to portions of the transcript. Mother has not affirmatively demonstrated that the court failed to independently review her objections. Accordingly, we overrule this assignment of error.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED AS A MATTER OF LAW IN PERMITTING THE DEFENDANT/APPELLANT'S EX-HUSBAND, NICHOLAS LEWIS, TO TESTIFY AGAINST THE DEFENDANT/APPELLANT WHEN THE DEFENDANT / APPELLANT'S EX-HUSBAND, NICHOLAS LEWIS, HAD ULTERIOR MOTIVES TO SEE THE DEFENDANT / APPELLANT NOT SUCCEED AND HAD PREVIOUSLY BEEN [REPRESENTED] BY DEFENDANT / APPELLANT'S COUNSEL AT THE TIME OF THE HEARING CREATING A CONFLICT OF INTEREST.[1]

{¶ 32} Mother argues that the court had a duty to inquire further into whether a conflict of interest existed requiring Mother's counsel's disqualification where Mother's

---

1. Mother's phrasing of her assignment of error suggests that she is challenging the court's decision to allow Lewis to testify. However, Mother's argument under this assignment of error does not address that issue and instead alleges that the court erred by failing to inquire into whether Mother's counsel should be disqualified for a conflict of interest.

counsel announced during the hearing that he previously represented Lewis. Mother asks this court to remand the case for a determination of whether a conflict existed.

{¶ 33} Lewis testified at the October hearing and on one day of the hearings in May. The claimed conflict only relates to the May hearing date. Mother had different counsel at the October hearing.

{¶ 34} Father called Lewis to the stand to give testimony. Prior to Lewis' direct examination, Mother's counsel stated that he wanted to make the court aware that he previously represented Lewis. Counsel stated: "I previously represented [Lewis] in a divorce case and again it was Brittany Lewis back then. That case did not complete. They then later divorced and I don't think I've had contact with Nick Lewis for anything for four or five years maybe. I mean we can ask him that. But I see no conflict, I just wanted to make sure the Court was aware in case it comes up." The court then asked the parties if they had any questions about the issue. Mother responded: "I don't." Lewis indicated he was uncertain, and so the court explained the potential conflict. However, the court stated that it did not perceive a conflict because Lewis was a witness and not a party in the case.

{¶ 35} Lewis responded that he understood the issue. Neither Mother nor Father objected. Lewis gave his testimony and Mother's counsel cross-examined him.

{¶ 36} Mother did not move to disqualify her own counsel or otherwise object to Lewis testifying. Mother raised the issue of a conflict in her supplemental objections. However, for the reasons discussed in response to the first assignment of error, the court properly declined to consider those objections. Accordingly, Mother is limited to a review for plain error.

{¶ 37} The plain error doctrine in civil cases applies only in the "extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process,

- 9 -

thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997). The doctrine implicates errors that are "obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982).

{¶ 38} Mother claims there was a duty on the court's part to inquire further into whether a conflict of interest existed and cites to several cases including *State v. Gillard*, 64 Ohio St.3d 304 (1992); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173 (1978); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708 (1980); and *Wood v. Georgia*, 450 U.S. 261, 101 S.Ct. 1097 (1981). However, these are criminal cases and relate to a criminal defendant's right to counsel under the Sixth Amendment. Unlike criminal proceedings and certain civil proceedings involving the deprivation of life, liberty or property, there is no right to effective counsel in civil domestic relations cases between individual parents involving residential parent status. *Carpenter v. Jetter*, 12th Dist. Clermont No. CA1995-01-007, 1996 Ohio App. LEXIS 19, *5 (Jan. 8, 1996).

{¶ 39} Where a party has moved to disqualify counsel based on a conflict of interest, a trial court has a duty to investigate the conflict but also has discretion on whether to disqualify counsel. *155 N. High v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 426 (1995). An attorney should not be disqualified solely upon an allegation of a conflict of interest even where the requested disqualification is based upon ethical considerations. *Fifth Third Bank v. Q.W.V. Properties, LLC*, 12th Dist. Butler No. CA2010-09-245, 2011-Ohio-4341, ¶ 41. The moving party still must demonstrate that disqualification is necessary to avoid tainting the proceedings. *Id.*, citing *Creggin Group, Ltd. v. Crown Diversified Industries Corp.* 113 Ohio App.3d 853, 858 (12th Dist.1996).

{¶ 40} Again, no party requested Mother's counsel's disqualification and Mother must

demonstrate plain error in the court's failure to investigate the alleged conflict more thoroughly. We do not find that plain error occurred in this case. Lewis' testimony in the May hearing was of limited significance. Lewis corroborated Father's claim that Mother was leaving her children in the care of the teenager who Mother agreed was not a suitable babysitter. While the magistrate's decision mentioned the teenager, this was just one of many factors considered by the magistrate in rendering its decision.

{¶ 41} We also note that Mother's counsel effectively cross-examined Lewis concerning the teenager by confronting him with the fact that he allowed the teenager to babysit his child and made no effort to find a more suitable babysitter. We cannot say that Mother's counsel's decision to cross-examine a former client tainted the proceedings in any manner. Nor did Mother suffer any obvious prejudicial error. This assignment of error is therefore overruled.

{¶ 42} Assignment of Error No. 3:

{¶ 43} THE TRIAL COURT ERRED IN REACHING ITS DECISION BECAUSE THE MANIFEST WEIGHT OF EVDIENCE CLEARLY FAVORED THE DEFENDANT / APPELLANT.

{¶ 44} Mother argues that the court's decision designating Father as the son's residential parent and legal custodian was against the manifest weight of the evidence. Mother argues that the court erroneously relied on Lewis' testimony even though he had ulterior movies. Mother contends that the court placed too much weight on its findings that Mother's lifestyle was hectic. Mother argues that the court failed to recognize that the son had behavioral issues and Mother's lifestyle was hectic because Father did not believe that these behavioral issues existed. Finally, Mother argues that the greater weight of the evidence indicated that she would be the better parent, as she was more engaged in the child's parenting and medical care.

{¶ 45} The standard of review in a manifest weight of the evidence challenge requires us to determine whether the factfinder, in resolving conflicts in the evidence, clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re K.R.*, 12th Dist. Clermont No. CA2015-06-049, 2016-Ohio-2775, ¶ 10. In making this determination, "'an appellate court is guided by the presumption that the trial court's findings were correct.'" *In re M.D.*, 12th Dist. Butler No. CA2006-09-223, 2007-Ohio-4646, ¶ 28, quoting *In re Peterson*, 10th Dist. Franklin No. 01AP-381, 2001 Ohio App. LEXIS 3814, *3 (Aug. 28, 2001). "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court." *In re T.M.*, 12th Dist. Butler No. CA2007-01-019, 2007-Ohio-6034, ¶ 28, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶ 46} After thoroughly reviewing the record, we do not conclude that the court lost its way and created a manifest miscarriage of justice in designating Father as residential parent. With respect to Lewis' testimony, the court was free to believe or not believe his testimony based on Mother's allegations that he harbored a bias. Evidence in the record supported the court's conclusion that Mother's decisions led her to lead a hectic lifestyle. This included Mother's choice to prioritize her adult relationships over what was in the son's best interest. The record also supports the conclusion that Mother lacked credibility with respect to her claim that her home was not ordinarily in the cluttered and unsanitary condition which Father's photos depicted. Mother's claim that Father may have planted the dog feces and that her home was cluttered because she was "sorting" items for donation to charity strains credulity.

{¶ 47} Mother argues that the court failed to recognize that her son had behavioral issues and that she was the better parent to attend to those needs as Father discounted

those issues. However, Mother did not introduce expert medical testimony indicating that the child had ongoing needs for medical treatment or therapy. Given Mother's credibility issues, the court was free to disregard her claims about concerns with her son where Father stated he did not observe the same issues. And in fact, Mother testified that she was not seeking further medical treatment and was "satisfied" with her son's health.

{¶ 48} In sum, we conclude that the greater weight of the evidence supported the trial court's conclusion to designate Father as the residential parent and legal custodian of the child. The son needs to be in a stable environment. Father testified that he lived with his fiancé and their daughter in a farmhouse on five acres. Father had a job with Duke Energy. The evidence clearly indicated that Father was more capable of providing a stable environment than Mother. Accordingly, we overrule Mother's third assignment of error.

{¶ 49} Judgment affirmed.

RINGLAND and M. POWELL, JJ., concur.