[Cite as *Johnson v. Keith*, 2013-Ohio-451.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| S. PHILLIP JOHNSON, et al., | : | |
| Plaintiffs-Appellants, | : | CASE NO.   CA2012-04-032 |
| | : | O P I N I O N |
| - vs - | | 2/11/2013 |
| | : | |
| MIKE L. KEITH, | : | |
| Defendant-Appellee. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2012-CVH-1082


Taliaferro, Carran & Keys, PLLC, Paul R. Markgraf, 1005 Madison Avenue, Covington, KY 41011, for plaintiffs-appellants, S. Phillip & Patricia J. Johnson and Kenneth K. Brown

Crowe and Welch, Robert H. Welch II, 1019 Main Street, P.O. Box 296, Milford, Ohio 45150-0296, for defendant-appellee


**PIPER, J.**

{¶ 1}   Plaintiffs-appellants, S. Phillip Johnson, Patricia Johnson, and Kenneth Brown, appeal a decision of the Clermont County Court of Common Pleas dismissing multiple counts in a lawsuit and interpreting an easement and maintenance agreement.

{¶ 2}   S. Phillip and Patricia Johnson and Kenneth Brown (Plaintiffs) own adjoining properties, along with defendant-appellee, Mike Keith, in Miami Township.  Plaintiffs and

Keith share a common private drive, Sugar Ridge Lane, which provides ingress and egress to the parties' properties. The drive is essentially a gravel lane covered by tar and chip.

{¶ 3} A recorded easement and Maintenance Agreement (Agreement) were executed by previous owners of the properties now owned by Plaintiffs and Keith regarding the use and maintenance of Sugar Ridge Lane. As part of the Agreement, the costs to maintain the private drive were apportioned to all property owners on a pro-rata basis. The Agreement also differentiated between maintaining the drive, which is an equal responsibility of all parties, and making improvements to the drive, which can be the responsibility of only the party seeking the improvement. A specific clause directs any owner who uses the drive for egress and ingress when constructing a home to replace the drive in as good a condition as it was prior to any use by construction equipment.

{¶ 4} In 2005, the Johnsons, Brown, and Keith agreed to repair the drive, and shared equally the cost of spreading, contouring, and compacting newly-laid gravel. Drainage ditches along the drive were also cleared so that rainwater would flow away from the road. The Johnsons also wanted the gravel sealed through a "tar and chip" process, but Keith did not agree to the extra process. While Brown agreed that tarring and chipping the drive would be beneficial, he did not contribute toward the cost of the process. Therefore, the Johnsons paid to have the drive tarred and chipped.

{¶ 5} Keith began constructing his home in 2006, approximately 14 months after the drive had been updated. After the construction of Keith's home was completed in 2007, Plaintiffs expressed their belief that the drive had been damaged and asked Keith to restore the drive to its prior condition as set forth in the Agreement. Keith spread gravel with a Bobcat in various areas of the drive, but did not have the drive re-tarred and chipped. Plaintiffs complained that spreading gravel caused damage to the drive's contour that had previously facilitated water run-off, and also led to ruts forming when rain water caused

erosion to the drive and its gravel base. Plaintiffs also protested when Keith placed "fine aggregate" on the driveway without compacting it, thus causing what they alleged was an excessive amount of dust.

{¶ 6} In 2009, the Johnsons, with Brown's agreement but no financial contribution, restored the driveway by re-establishing drainage lines, road contour, and tar and chip finish, and paid $17,337 to do so. Near that same time, Keith blacktopped the portion of the drive from the Johnson residence to his own home, but did not otherwise contribute to the cost of the work done to the portion of the drive that everyone shared.

{¶ 7} The Johnsons also showed concern for Keith's past behavior regarding the drive, such as driving his all-terrain vehicle recklessly on the drive, plowing snow without proper equipment, and severing a portion of an invisible fence on the Johnsons' property with a weed trimmer. The Johnsons also complained that Keith trimmed bushes, trees and grass that belonged to them, and that such activities were not necessary to provide ingress and egress for Keith, as was provided in the easement.

{¶ 8} In 2010, Plaintiffs brought suit against Keith, seeking a declaratory judgment to enforce provisions of the easement and Agreement. Within the second count, Plaintiffs alleged damages of $17,337, the amount the Johnsons expended for repairing the drive. In the third count, the Johnsons alleged damages to their property because Keith had undercut a portion of a hillside on their property without their consent. The Johnsons also alleged that the dust from the fine aggregate would cause them additional expenses to clean and preserve the finish on their log home, and that when Keith blacktopped a portion of the drive, the contractors damaged a wooden planter on their property. Brown alleged in count four that the utility lines on his property were damaged during the construction of Keith's home and that he would incur $1600 in expenses in the future to relocate and repair the lines. The Johnsons and Brown also moved for attorney fees within the fifth count.

- 3 -

{¶ 9} The matter proceeded to a bench trial. During the first day of the trial, November 29, 2011, the trial court visited the parties' property, and physically viewed the drive. Upon everyone's return to court, counsel for both parties began discussing stipulations. Plaintiffs' counsel specifically requested that the trial court take notice of paragraphs 14-17 in the complaint, which were admitted by Keith. Specifically, paragraph 16 within Plaintiffs' complaint alleged Keith's failure to return the drive to the condition it was in before the construction began on his home. Within his answer, Keith admitted his failure to return the drive to the preconstruction condition.

{¶ 10} When Plaintiffs' counsel asked the trial court to take notice of Keith's admittance within his answer, Keith's counsel argued that his admitting to that paragraph in Plaintiffs' complaint, while somewhat inartful, was his way of saying that Keith had actually repaired the drive to a *better* condition than it was prior to the construction. The trial court noted the confusion caused by Keith having admitted to the Plaintiffs' complaint on that issue, and granted leave for Keith to amend his answer to deny Plaintiffs' complaint specific to whether Keith failed to return the drive to the same condition it was prior to the construction.

{¶ 11} Because of the amendment, the trial court also granted Plaintiffs a continuance, giving all parties time to reorganize their arguments, and to seek any additional evidence necessary to support their claims. Soon thereafter, the parties filed an agreed entry, signed by counsel for all parties and the trial court, in which all parties agreed that "Defendant's Answer is amended to have Defendant deny Paragraph 16 of the Complaint." The agreed entry did not amend any other portion of Keith's answer or pleadings.

{¶ 12} After the continuance, the bench trial recommenced on February 27, 2012, and lasted two days. At the close of Plaintiffs' case, Keith moved for dismissal of Plaintiffs' claims pursuant to Civ.R. 41(B). The trial court granted Keith's motion in part, dismissing counts

two, four, and five. Without Keith presenting a case, the court took counts one and three into consideration, and later granted judgment in favor of Keith on count one, declining to grant Plaintiffs' request for a declaratory judgment. Instead, the court found that the easement and Agreement were unambiguous and the terms and conditions found therein would remain in place. The court found in favor of the Johnsons regarding count three, but limited damages to $146.75. Plaintiffs now appeal the trial court's decision, raising the following assignments of error:

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED BY GRANTING DEFENDANT'S CIV.R. 41(B)(2) MOTION AT THE CONCLUSION OF PLAINTIFF'S [sic] CASE.

{¶ 15} Plaintiffs argue in their first assignment of error that the trial court erred in granting Keith's motion for dismissal on count two regarding the cost for work done on the drive totaling $17,337.[1]

{¶ 16} According to Civ.R. 41(B)(2),

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Civ. R. 52 if requested to do so by any party.

{¶ 17} Therefore, Civ.R. 41(B)(2) specifically directs a trial court to consider both the

---

1. As previously stated, Keith moved for dismissal, and the trial court granted such regarding counts two, four, and five. Count two was specific to the $17,337 expense the Johnsons incurred for work on the drive; count four was specific to Brown's $1,600 future expenditure to repair utility lines damaged during the construction of Keith's home; and count five was specific to Plaintiffs' request for attorney fees. However, Plaintiffs limit their challenge to the trial court's ruling regarding count two only, and do not argue that the trial court erred in dismissing the other two counts. Therefore, we will limit our analysis to count two only.

law and the facts and, as the trier of fact, weigh the evidence to determine whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard. *Webb v. C&J Properties, LLC*, 12th Dist. No. CA2010-01-016, 2010-Ohio-3818.

{¶ 18} A trial court's ruling on a Civ. R. 41(B)(2) motion will be not be disturbed on appeal unless such judgment is erroneous as a matter of law or against the manifest weight of the evidence. *Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348 (12th Dist.). The Ohio Supreme Court has clarified the standard for reviewing whether a trial court's decision in a civil matter is rendered against the manifest weight of the evidence. *Eastley v. Volkman*, 123 Ohio St.3d 328, 2012-Ohio-2179.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

*Id.* at ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). (Emphasis sic.)

{¶ 19} "In a manifest weight analysis, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble v. Stark,* 12th Dist. Nos. CA2011-06-063, CA2011-06-064, 2012-Ohio-3130, ¶ 67; *Thompkins* at 387.

{¶ 20} The second count dismissed was specific to whether Keith was liable to Plaintiffs for the $17,337 cost to repair the drive after Keith constructed his home and caused damage to the drive. According to the easement and Agreement entered into by the parties,

Any owner making use of said driveway for an unusual purpose, such as construction of a residence, requiring the introduction upon said driveway of heavy trucks and equipment, shall replace said roadway in as good a condition as it was prior to the introduction of such heavy trucks and equipment. Such construction shall be done as speedily as possible.

{¶ 21} Within the second count, Plaintiffs alleged that Keith failed to abide by these terms because the drive was damaged during the construction of Keith's home, yet Keith failed to return the roadway to as good a condition as it was in prior to his home being constructed. The trial court found that Plaintiffs failed to carry their burden to prove causation, mainly that Keith used construction equipment during the construction of his home and that the equipment caused damage to the road. While the trial court did not make any findings of fact or conclusions of law regarding the dismissed claims, the trial court did go into detail regarding its reasoning for dismissing the various claims after rendering its decision during the bench trial. Specific to the second count, the trial court explained that it essentially granted the motion to dismiss because Plaintiffs failed to prove causation, stating:

> What really troubles me, and what I kept waiting for in the day and a half that we've been testifying deals obviously with the claims for damages in Count 2. And Paragraph 15 talks about the construction, the heavy equipment trucks associated, and they caused damage to the roadway. And there are lots of pictures. There are videos of – of some ruts at various times, tracks. But I never heard any causal connection.
>
> * * *
>
> And the causal connection here is what to me is – is glaring missing [sic] as to the – as to what caused these tracks in the roadway. * * * I don't have sufficient evidence at this point in time to establish, to me as the trier of fact that I can reasonably believe without making giant assumptions that the traffic – that the construction traffic caused this, because I don't know what construction traffic went up that – went up and down that roadway.
>
> * * *

> I think there is just candidly paucity of evidence concerning what caused the damage, but more importantly insufficient evidence to demonstrate that these heavy trucks and the construction equipment that I can only assume were utilized.

{¶ 22} The trial court's analysis, however, mistakenly relies on the lack of causation when dismissing the count. Paragraph 15, which the trial court references in its reasoning, is specific to Plaintiffs' complaint, in which they alleged that "during construction of the house, heavy equipment and trucks associated with the construction damaged the tar and chip, as well as the gravel base of the driveway which is subject to the Maintenance Agreement." Within Keith's answer, he admitted to the contents of paragraph 15, and never moved the court to amend or change his answer to paragraph 15. Therefore, by admitting to paragraph 15 in Plaintiffs' complaint, Keith admitted that (1) he constructed a home; (2) heavy equipment and trucks were used in association with the construction; (3) the equipment caused damage to the tar and chip; (4) the equipment caused damage to the gravel base of the drive; and (5) that the Agreement is implicated based on the use of construction equipment.

{¶ 23} After the trial court made its decision to dismiss the second count, Plaintiffs' counsel asked the court to reconsider, and specifically referenced paragraph 15. However, the trial court stated,

> And I understand damage, but what damage? I mean the problem * * * with all due respect is there was just absolutely no evidence presented by your clients as to the level of traffic that went there. There wasn't even any evidence to suggest. * * * There just simply was no evidence –sufficient evidence to suggest the level of traffic that would have caused this.

{¶ 24} Again, the pertinent language of the Agreement states,

> Any owner making use of said driveway for an unusual purpose, such as construction of a residence, requiring the introduction upon said driveway of heavy trucks and equipment, shall replace said roadway in as good a condition as it was prior to the

introduction of such heavy trucks and equipment. Such construction shall be done as speedily as possible.

{¶ 25} The Agreement does not reference or require proof of causation regarding any change in the condition of the drive, it only requires the party using it for construction to return the driveway to the same condition it was in before the equipment was used. Nor does the Agreement require any specific level of volume regarding construction equipment usage, as assumed by the trial court.

{¶ 26} By virtue of Keith's admission that he did in fact employ heavy equipment during the construction of his home and that the equipment damaged the driveway, the responsibility to return the drive to its previous condition was automatically triggered, as there is no other requirement of causation or proof of damages. The trial court's decision to dismiss count two for lack of causation, therefore, was against the manifest weight of the evidence.

{¶ 27} Based upon the Agreement, once a homeowner used heavy equipment and it changed the driveway in any form or fashion, that homeowner has the responsibility to return the drive to its prior condition. In light of Keith's admission, therefore, the inquiry at trial should have been directed to whether Keith returned the drive to its prior condition, the way it was before construction began on his home. While the trial court considered evidence on the condition of the drive during and after construction, as well as what led Plaintiffs to repair the drive on their own, the trial court did not hear any evidence from Keith regarding what steps he took to return the drive to its previous condition. Instead, the trial court dismissed the count, and told the parties that it had "enough information" to make its rulings. Therefore, Keith did not present any evidence regarding his efforts to abide by the terms of the Agreement. As such, on remand, the trial court must determine whether Keith returned the

drive to its previous condition as is required by the Agreement.[2]

{¶ 28} Having found the trial court's decision dismissing count two of Plaintiffs' complaint is against the manifest weight of the evidence, Plaintiffs' first assignment of error is sustained, and the matter is remanded to the trial court for further proceedings.

{¶ 29} Assignment of Error No. 2:

{¶ 30} THE TRIAL COURT ERRED BY HOLDING THAT A PARTY MAY TRESPASS ON THE PROPERTY OF ANOTHER TO PERFORM ACTS WHICH ARE NOT RELATED TO INGRESS OR EGRESS.

{¶ 31} Plaintiffs argue in their second assignment of error that the trial court erred in not granting them a declaratory judgment ordering that Keith could not perform maintenance within the easement area unless such maintenance was necessary to facilitate ingress and egress.

{¶ 32} As previously stated, the trial court denied Keith's Civ.R. 41(B)(2) motion to dismiss Plaintiffs' request for a declaratory judgment, but ultimately denied Plaintiffs' request. Plaintiffs asked the court for a declaratory judgment prohibiting Keith from interfering with their property rights unless his ingress or egress was impeded. However, the trial court ruled against Plaintiffs, finding instead, that the easement was clear and unambiguous and needed no further clarification.

{¶ 33} "The granting or denying of declaratory relief is a matter for judicial discretion, and where a court determines that a controversy is so contingent that declaratory relief does not lie, this court will not reverse unless the lower court's determination is clearly

---

2. This court's ruling is consistent also with the parties' understanding of the main issue within the case. During the first day of the trial, before it was continued, Keith's requested leave to amend the answer and deny that he had failed to return the drive to as good a condition as it was prior to construction. Counsel stated, "was it restored to the same condition? That's the entire case. * * * It can't come to any surprise * * * because that's the entire case."

- 10 -

unreasonable." *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 11, citing *Bilyeu v. Motorists Mut. Ins. Co.*, 36 Ohio St.2d 35 (1973).

> Any person interested under a written contract, inter alia, may have the court determine any question of construction or validity arising under the contract and obtain a declaration of rights, status, or other legal relations under it. A declaratory judgment may be either affirmative or negative in form and effect. In order to maintain an action for declaratory judgment, a party must show that a real controversy exists between the parties, which is justiciable in character, and that speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost. A trial court may dismiss a complaint for declaratory relief only if no real controversy or justiciable issue exists, or if the declaratory judgment will not terminate the uncertainty or controversy. Essentially, courts have the power to resolve present disputes and controversies, but do not have authority to issue advisory opinion[s] to prevent future disputes.

(Internal citations omitted.) *Reinbolt v. National Fire Ins. Co. of Hartford*, 158 Ohio App.3d 453, 2004-Ohio-4845, ¶ 13 (6th Dist.).

{¶ 34} An easement is a property interest in the land of another that allows the owner of the easement a limited use of the land in which the interest exists. *McCumbers v. Puckett*, 183 Ohio App. 3d. 762, 2009-Ohio-4465 (12th Dist.). "An easement has also been defined as a right that the owner of one estate, referred to as the 'dominant estate,' may exercise for his benefit in or over another's estate, referred to as the 'servient estate.'" *Id.* at ¶ 14, citing *1st Natl. Bank v. Mountain Agency, L.L.C.,* 12th Dist. No. CA2008-05-056, 2009-Ohio-2202, ¶ 14.

{¶ 35} A written easement that contains an express grant will be interpreted based upon the language contained in that grant. *Proffitt v. Plymesser,* 12th Dist. No. CA2000-04-008, 2001 WL 708884 (June 25, 2001). "[C]ommon, undefined words appearing in a written instrument 'will be given their ordinary meaning unless manifest absurdity results, or some other meaning is clearly evidenced from the face or overall contents of the instrument.'" *State ex rel. Petro v. R.J. Reynolds Tobacco Co.,* 104 Ohio St.3d 559, 2004-Ohio-7102, ¶ 23,

quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 36} The nature and extent of easements created by deed are determined by the words used in the deed by the grantor. *Robinson v. Campbell*, 12 Dist. No. CA88-02-006, 1988 WL 114285, *2-3 (Oct. 24, 1988), citing *Lowe v. Redgate*, 42 Ohio St. 329 (1884). "A deed is presumed to express the intention of the parties and it is the duty of the court to search for the meaning intended to be expressed in the deed. For that purpose, the court may read it in light of circumstances that surrounded the parties at the time of execution." *Robinson* at *3, citing *Bobo & Sry v. Wolf*, 18 Ohio St. 463 (1869). Where the deed is ambiguous, the court will try to ascertain the parties' intention through the rules of construction. *Hinman v. Barnes*, 146 Ohio St. 497 (1946).

{¶ 37} According to the easement and Agreement, "reasonable maintenance, upkeep, repair and/or rebuilding should be performed when so required so as to permit free, safe and easy passage of all persons having the right to use said driveway." The language of the easement and Agreement very clearly indicates that the parties' intent was to provide for effective ingress, egress, and utility placement. In order to facilitate such usage, the parties agreed that maintenance, upkeep, repair and rebuilding would be necessary at some point in time to "permit free, safe and easy passage of all persons having the right to use said driveway." The Agreement expressly requires that any maintenance, upkeep, repair and rebuilding be "reasonable." While the intent of the Agreement is clear, the Agreement itself as it relates to this provision is ambiguous, as the Agreement does not provide any parameters for determining what is reasonable. The Agreement addresses in part what the parties may not do, but gives little assistance in determining what the parties may do other than use the driveway on an equal basis.

{¶ 38} However, as a result of the Agreement, Plaintiffs and Keith have interests,

rights, and responsibilities, which are difficult to understand within the language of the Agreement. As such, the parties do have the right to have a court determine any question of construction arising under the Agreement and obtain a declaration of rights, status, or other legal relations under it. The court was correct in declining to rewrite, or add terms, to the Agreement. Much of the specific relief sought in Plaintiffs' declaratory judgment action was beyond the proper scope of a declaratory judgment action. As the trial court stated, terms cannot be re-written by requesting a declaratory judgment action. However, the parties are entitled to the trial court's assistance and judgment in understanding rights and responsibilities pursuant to the purpose of the agreement. Additionally, where the parties disagree as to what is reasonable within the intent of the Agreement, the trial court's judgment will be invaluable.

{¶ 39} Moreover, a declaratory judgment would be prudent in this matter because the parties have shown that a real controversy exists, which is justiciable in character, and that speedy relief is necessary to preserve rights which may be otherwise impaired or lost. Plaintiffs presented evidence that Keith has cut back trees, removed wild flowers planted by the Johnsons, and has damaged bushes and grass based on his belief that he has an unfettered right to do whatever he pleases within the 40-foot easement. While cutting back a tree may be reasonable depending on the specific circumstances, it is doubtful that circumstances would pose wild flowers as a threat to safe ingress and egress. However, these are findings that the trial court will likely determine in a declaratory judgment.

{¶ 40} While the Agreement is ambiguous, it is not so ambiguous as to permit a homeowner to take *any* action whatsoever within the easement area, as the Agreement is specific to *ingress, egress, and utilities*. Again, the Agreement recognizes that reasonable maintenance, upkeep, or repair may be necessary to permit free, safe, and easy passage by the homeowners. Therefore, the Agreement seems to prohibit *unreasonable* maintenance,

upkeep, or repairs that are *unnecessary* to permit free, safe, and easy passage by the homeowners.

{¶ 41} Therefore, the relevant question becomes, were Keith's actions of cutting trees, removing wild flowers, and damaging bushes and grass necessary to permit free, safe, and easy passage? Given the different perspectives of the parties and the lack of objective standards for determining the reasonableness of maintenance and upkeep, the trial court should have addressed this issue. As pertaining to safe, easy, ingress and egress, we find that denying Plaintiffs' request for a declaratory judgment in its totality was unreasonable, and reverse that decision and remand for further proceedings. Upon remand, the trial court must consider the purpose and intent of the Agreement relative to the parties' conduct and declare the parties' reasonable rights and responsibilities specific to the actions taken by Keith.

{¶ 42} Judgment reversed and the cause is remanded for further proceedings consistent with this opinion.

RINGLAND, P.J., and M. POWELL, J., concur.