[Cite as *Burdick v. Burd Brothers, Inc.*, 2019-Ohio-1593.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| R. SHAUN BURDICK, et al., | : | |
| Appellants, | : | CASE NO. CA2018-07-054 |
| | : | O P I N I O N |
| - vs - | | 04/29/2019 |
| | : | |
| BURD BROTHERS, INC., et al, | : | |
| Appellees. | : | |


CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016-CVH-1082


Becker & Cade, Howard D. Cade, III, 526-A Wards Corner Road, Loveland, Ohio 45140, for appellants

Keating Muething & Klekamp, Louis F. Gilligan, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202, for appellees


**RINGLAND, P.J.**

{¶ 1} Plaintiffs, Shaun and Sheri Burdick (collectively, "the Burdicks"), appeal the decision of the Clermont County Court of Common Pleas, which dismissed their claims against Burd Brothers, Inc. and other defendants. For the reasons described below, this court affirms the decision of the lower court.

{¶ 2} Burd Brothers, Inc. is a family-owned regional trucking business.[1] Shaun Burdick and his brother, Tyler Burdick, founded the company in 1993. However, Shaun left the business and relinquished his ownership interest within a few months of the founding. Later, Shaun and Tyler's father, Richard Burdick, joined the business. Richard eventually became the company's chief executive officer and received an ownership interest.

{¶ 3} Shaun returned to work at Burd Brothers in 2000. He managed the company's finances and eventually became vice president and chief financial officer. The company awarded Shaun stock in 2009. The company also awarded stock to other members of the Burdick family, including Sheri, who is Shaun's wife, Tyler and Richard's respective wives, and Richard's daughter, Erin. Of the seven shareholders, only Shaun, Tyler, and Richard were ever employed by the company. At some point, the company began paying for personal vehicles, vehicle insurance, and some ancillary vehicle expenses, for Shaun, Tyler, Richard, each of their wives, and Erin ("the vehicle benefits").

{¶ 4} In November 2014, the company terminated Shaun's employment. The company instructed Shaun to return "all keys, cell phones, vehicles, and corporate records * * *." In December 2014, Shaun wrote to the company, stating: "[m]y employment included my wife's vehicle as part of the employment compensation package and my vehicle was to be transferred to me personally at the end of the lease * * *. Please transfer the title of the vehicles [to] me personally and mail the titles to my home address that you have on file."

{¶ 5} In May 2015, Shaun's attorney wrote to the company. Counsel advised that Shaun was (1) requesting an opportunity to view the company's books and conduct an accounting, (2) inquiring whether the company had defaulted on debt obligations of which

---

1. Burd Brothers, Inc. is one of several companies involved in the family business. Burd Brothers, Inc. manages the business operations. The other companies – which are all managed and owned by members of the Burdick family – control different aspects of the business, e.g., one company exclusively manages freight brokering and another leases vehicles.

Shaun may be personally liable, and (3) investigating a claim for wrongful termination "as well as for the monies and benefits made available to other shareholders and members of the Burd Brothers companies."

{¶ 6} The company responded through counsel within a few weeks. Regarding the request for an accounting, counsel wrote that Shaun had been the chief financial officer and therefore "was fully informed about the financial books and records as well as tax returns." Counsel stated that Shaun had been provided with tax returns "as well as receiving his K-1s." Counsel further stated that the company was not delinquent on its debt obligations. Counsel responded to the potential wrongful termination claim by asserting that the company had properly terminated Shaun for failure to perform job duties and acts of insubordination. Counsel ended the letter by stating "[i]f you have any further questions or need any additional information, please feel free to contact me."

{¶ 7} No further communications took place. 14 months later, in August 2016, the Burdicks filed suit against Burd Brothers, Inc., two of the related limited liability companies, Richard and Tyler and their respective wives, and Erin.

{¶ 8} The Burdicks asserted a claim for wrongful termination. They also demanded an accounting of the company pursuant to their rights as shareholders under R.C. 1701.37(C) and for attorney fees and costs related to obtaining the accounting. Other claims asserted included breach of fiduciary duty and minority shareholder oppression. The defendants answered and counterclaimed, alleging that Shaun had converted company assets and had tortuously interfered with the company's business interests after his termination.

{¶ 9} Prior to trial, the Burdicks agreed to dismiss some of their claims and the

- 3 -

defendants agreed to dismiss their counterclaims.[2] Following this partial dismissal of claims, the issues at trial were narrowed to whether the Burdicks were entitled to (1) attorney fees and costs incurred in seeking the accounting and, (2) monetary damages representing the value of alleged shareholder benefits, i.e., the vehicle benefits, which were denied to the Burdicks after Shaun's termination.

{¶ 10} The matter proceeded to a bench trial. The Burdicks testified and called Richard and Tyler to testify. Following the Burdicks' case-in-chief, the defendants moved for dismissal.

{¶ 11} The court granted the defendants' motion. Regarding the claim for attorney fees and costs, the court found that the Burdicks had no statutory right to attorney fees. The court found that the Burdicks were not otherwise entitled to attorney fees because the company had not acted in bad faith. The court noted that Shaun chose not to respond to the company's invitation to engage in further communications concerning his request for an accounting and found it reasonable for the company's counsel to believe the issue had been resolved. The court also found that Shaun's letter demanding the accounting was deficient under R.C. 1701.37(C) for failing to state a specific purpose for the request.

{¶ 12} With respect to the vehicle benefits, the court found that the Burdicks had not proven, by a preponderance of the evidence, that the vehicle benefits were shareholder benefits. The court determined that the evidence more reasonably supported the finding that the vehicle benefits were part of an employee compensation package provided by the company to Shaun, Tyler, and Richard. The court specifically referred to Shaun's letter in which he described his and Sheri's vehicles as part of his employment compensation

---

2. The defendants provided the Burdicks with the requested corporate records during discovery, which effectively mooted the claim for an accounting. Shaun obtained a higher paying job, which diminished the value of his wrongful termination claim.

package.

{¶ 13} The Burdicks assign one error for our review:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING APPELLANT'S MOTION TO DISMISS.

{¶ 15} The Burdicks contend that the court erred in dismissing their claim for attorney fees and costs and in finding that they failed to prove that the vehicle benefits were shareholder benefits. In ruling on a motion for dismissal following the plaintiff's case in a bench trial, the trial judge, as the trier of fact, weighs the evidence and determines whether the plaintiff has proven the necessary facts by the appropriate evidentiary standard. Civ.R. 41(B)(2); *Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 23. If the court finds that the plaintiff failed to meet its burden of proof, then the trial court may enter judgment in the defendant's favor. *Ohio Valley* at *id.* A trial court's ruling on a Civ.R. 41(B)(2) motion may not be disturbed on appeal unless such judgment is "erroneous as a matter of law or against the manifest weight of the evidence." *Johnson v. Keith*, 12th Dist. Clermont No. CA2012-04-032, 2013-Ohio-451, ¶ 18.

{¶ 16} In a manifest weight analysis, the appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Ohio Valley* at ¶ 32. In general, this court must defer to the factfinder with respect to credibility determinations. *Id.*

## Attorney Fees and Costs

{¶ 17} The Burdicks argue that the court erred in dismissing their claim for attorney fees and costs on the basis that Shaun failed to properly request an accounting pursuant to

the language set forth in R.C. 1701.37(C).[3] However, the company did not reject Shaun's request for records on this basis and therefore whether Shaun included the proper statutory language in his letter is irrelevant to the issue of whether the Burdicks would be entitled to attorney fees and costs.

{¶ 18} Ohio follows the "American Rule," under which a prevailing party generally may not recover their attorney fees and costs from the opposing party. *State ex rel. Gmoser v. Village at Beckett Ridge Condominium Owners' Assn.*, 12th Dist. Butler No. CA2016-02-035, 2016-Ohio-8451, ¶ 44. However, attorney fees may be awarded when a statute or an enforceable contract specifically provides for the award of attorney fees, or when the prevailing party demonstrates the other party has acted in bad faith. *Id.*

{¶ 19} R.C. 1701.37(C) contains no attorney fee-shifting provision. The Burdicks did not claim that they were entitled to attorney fees by virtue of a contract with the company. Thus, the Burdicks would necessarily need to demonstrate that the company acted in bad faith. In general, "bad faith" has been defined as "'that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest.'" *Master Chem. Corp. v. Inkrott*, 55 Ohio St. 3d 23, 28 (1990), quoting *Smith v. Halverson*, 273 N.W. 2d 146, 150-151 (S.D. 1978).

{¶ 20} The evidence at trial revealed that Shaun made a written demand for corporate records to conduct an accounting. In responding, the company's counsel suggested that there was no need to produce the requested documents because Shaun, as chief financial officer, would have been privy to the company's financial information. Moreover, counsel stated that Shaun had been provided with company tax returns and would receive schedule

---

3. R.C. 1701.37(C) provides, in relevant part: "[a]ny shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the * * * books and records of account * * *."

K-1s.

**{¶ 21}** The Burdicks claim that this response was an effective denial. However, counsel did not state that the company would not provide the documents and expressly invited additional discussion. Shaun chose not to accept this invitation, apparently because he did not believe that the company would ever provide the records willingly. The Burdicks then filed suit, over a year later. Shaun testified that part of this delay was so that he could set aside enough money to pay for the litigation.

**{¶ 22}** This court concludes that the lower court did not clearly lose its way in finding that the Burdicks failed to establish bad faith. The Burdicks' failure to engage in any further communications following the company's letter would have reasonably indicated to the company that the matter was resolved. Thus, there was no evidence that the company ever acted with a dishonest purpose or engaged in any wrongdoing. The court's decision not to award the Burdicks reimbursement for attorney fees and cost is not legally erroneous and is supported by the weight of the evidence.

<u>Alleged Shareholder Benefits</u>

**{¶ 23}** The Burdicks argue that the court erred in its finding that they did not prove that the vehicle benefits were shareholder benefits. Initially, the Burdicks contend that the court erred in failing to place the burden on the defendants to prove that the vehicle benefits were fair and reasonable. However, whether the benefits were fair and reasonable was not an issue tried in the proceedings below and is irrelevant to the issue of whether the benefits were employment compensation or a shareholder benefit.

**{¶ 24}** The court found that the greater weight of the evidence indicated the vehicle benefits were an employment benefit. Upon review, some competent and credible evidence supports this finding.

{¶ 25} Shaun was the company's chief financial officer and should have known how the company structured compensation to its employees and benefits to its shareholders. In a letter to the company sent after his termination, Shaun referred to both his vehicle and his wife's vehicle as part of *his* employment compensation package: "[m]y employment included my wife's vehicle as part of the employment compensation package and my vehicle was to be transferred to me personally at the end of the lease * * *. Please transfer the title of the vehicles [to] me personally and mail the titles to my home address that you have on file." On Shaun's cross-examination, the following exchange occurred:

> Counsel: So you specifically indicated there that your wife having a car and you having a car was part of your employment compensation package, correct?
>
> Shaun: That's the way it reads.
>
> Counsel: And you meant what you said, didn't you?
>
> Shaun: Normally yes.
>
> Counsel: Okay. All right. And that was the situation with Tyler and his wife, too, as you knew. That was part of his compensation package?
>
> Shaun: No.
>
> Counsel: It wasn't part of his compensation package?
>
> Shaun: Shareholders – if you were a shareholder, you had cars.
>
> Counsel: It wasn't based on being a shareholder. It was based on being an employee, wasn't it?
>
> Shaun: You could say that.
>
> Counsel: Well, why didn't you say that in this letter? This is because you've got a lawsuit now –
>
> Shaun: Yeah.
>
> Counsel: – as a shareholder is why you're saying this, but until you got in this lawsuit and got legal counsel, it was based on a – it was compensation for employment, correct?

Shaun: Correct.

{¶ 26} Shaun essentially conceded that his view of the nature of the vehicle benefits had changed since the time he was terminated and filed the lawsuit. In this regard, the court indicated that it found Shaun's pre-lawsuit letter more credible than his in-court testimony. This court defers to the lower court with respect to credibility determinations. *Ohio Valley* at ¶ 32. Consequently, this evidence would support the conclusion that the vehicle benefits were employment benefits and that the respective wives of Shaun, Tyler, and Richard received the vehicle benefits because their husbands were company employees.

{¶ 27} However, Erin was never an employee of the company and did not have a spouse who was a company employee. Given the lack of any other explanation, Erin's receipt of vehicle benefits does suggest a shareholder benefit. Nonetheless, it is conceivable that the vehicle benefit bestowed upon Erin was the result of Tyler's or Richard's employment compensation package. This issue was not developed at trial. All that was established was that Erin received vehicle benefits and had never been formally employed by the company.

{¶ 28} In a manifest weight analysis this court must find that the trial court "clearly lost its way," and the evidence weighs heavily against the findings of the court. In this case, the evidence does not weigh heavily towards either conclusion concerning the nature of the vehicle benefits. This observation is consistent with the trial court's finding that the Burdicks failed to prove, by a preponderance of the evidence, that the vehicle benefits were a shareholder benefit.

{¶ 29} Based on the foregoing, this court concludes that the trial court did not err in dismissing the Burdicks' claim for attorney fees and costs and for damages for the alleged deprivation of shareholder benefits. This court overrules the Burdicks' sole assignment of

error.

**{¶ 30}** Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.