[Cite as *Ohio Dept. of Agriculture v. Brown*, 2020-Ohio-3316.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

|  |  |  |
|---|---|---|
| OHIO DEPARTMENT OF AGRICULTURE, | : | |
| | : | CASE NO. CA2019-11-085 |
| Appellee, | : | O P I N I O N<br>6/15/2020 |
| - vs - | : | |
| | : | |
| THOMAS BROWN, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2016CVH00923

Dave Yost, Attorney General of Ohio, James R. Patterson, Lydia Arko Zigler, Executive Agencies Section, 30 East Broad Street, 26th Floor, Columbus, Ohio 43215, for appellee

Strauss Troy Co., LPA, Brian J. O'Connell, Joseph J. Braun, Amy L. Hunt, 150 East Fourth Street, 4th Floor, Cincinnati, Ohio 45202, for appellant

**PIPER, J.**

{¶1} Appellant, Thomas Brown, appeals a decision of the Clermont County Court of Common Pleas involuntarily dismissing his counterclaims against appellee, the Ohio Department of Agriculture ("ODA").

{¶2} The Asian Longhorned Beetle ("ALB"), an invasive insect pest, is capable of causing fatal damage to deciduous hardwood trees located in Ohio. These trees, including

maple, birch, poplar, and willow, make up an important segment of Ohio's environmental economy including timber, hardwood landscape trees, and the plant nursery industry. The trees also play an important role in Ohio's forest ecosystem. In 2011, an ALB infestation was discovered in Clermont County that threatened both Ohio's economy and environment.

{¶3} The ODA and United States Department of Agriculture ("USDA") created the ALB Cooperative Eradication Program ("the ALB Program") to help eliminate Ohio's ALB infestation.[1] The ODA has power to enforce Ohio's plant pest control laws as enumerated in R.C. Chapter 927, and the USDA has parallel authority under the federal Plant Protection Act. Given their comparable authority and goals, the ODA and USDA often work together to coordinate efforts and share resources.

{¶4} Specific to the ALB Program, the ODA oversaw the surveying of trees to identify ALB infestations while the USDA had sole responsibility for the removal of infested trees. Thus, the ODA lacked responsibility for, or oversight of, tree removal from infested properties and its authority was limited to inspection and identification of ALB infestations in Ohio.

{¶5} In 2012, the ODA identified an ALB infestation of trees on Brown's property. These infested trees were removed by Young's General Contracting, Inc. ("Young's"), which had contracted with the USDA for tree removal. The ODA attempted to perform follow up inspections of Brown's property to determine if the ALB infestation had been fully eradicated. However, Brown refused to allow access to his property on three separate occasions in October 2015 and January 2016. Brown refused ODA access for inspections because he believed Young's damaged his property during removal of infested trees and

---

1. The USDA has declared ALB infestation an emergency and works with state and local governments across the country to eradicate the ALB before infestations cause lasting economic damage. *Evans v. United States*, 876 F.3d 375, 378 (1st Cir.2017).

failed to return the property to its former state after the trees were removed.

{¶6} The ODA filed for injunctive relief, asking the trial court to restrain Brown from interfering with efforts to survey and later remove any infested trees. Brown asserted several counterclaims, including a request for injunctive relief and a takings claim in which he alleged destruction of property and failure to remediate his land after the removal of trees.

{¶7} The matter proceeded to a bench trial during which the ODA presented a case for injunctive relief. Brown then presented his case-in-chief in support of his counterclaims. At the close of Brown's case, the ODA made a motion to dismiss Brown's counterclaims, which the trial court granted pursuant to Ohio Civ.R. 41(B)(2). The trial court determined that the proper party to pursue the counterclaims against was the USDA because it had authority regarding tree removal, not the ODA which only had survey and identification authority. Brown now appeals the trial court's decision, raising the following assignment of error:

{¶8} THE TRIAL COURT ERRED BY GRANTING THE ODA'S MOTION FOR INVOLUNTARY DISMISSAL OF BROWN'S COUNTERCLAIMS PURSUANT TO CIV.R. 41(B)(2).

{¶9} Brown argues in his assignment of error that the trial court erred by involuntarily dismissing his counterclaims.

{¶10} According to Civ.R. 41(B)(2), after a plaintiff in a bench trial has completed the presentation of his or her evidence, the defendant may move for a dismissal on the ground that the plaintiff has failed to demonstrate a right to relief based upon the facts and the law. The trial court, who is the trier of fact in a bench trial, then determines whether it is appropriate to render judgment against the plaintiff or hold judgment until the close of all evidence. The court, as the trier of the facts, may then determine the facts and render

judgment against the plaintiff, or may decline to render any judgment until the close of all the evidence.

{¶11} A trial court's ruling on a Civ.R. 41(B)(2) motion may not be disturbed on appeal unless such judgment is erroneous as a matter of law or against the manifest weight of the evidence. *Ohio Valley Associated Builders & Contrs. v. Rapier Elec., Inc.*, 12th Dist. Butler Nos. CA2013-07-110 and CA2013-07-121, 2014-Ohio-1477, ¶ 23. In a manifest weight analysis, the appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Burdick v. Burd Bros.*, 12th Dist. Clermont No. CA2018-07-054, 2019-Ohio-1593, ¶ 16.

{¶12} After reviewing the record, we find the trial court's decision was not against the manifest weight of the evidence nor erroneous as a matter of law. As noted above, Brown alleged in his counterclaims to the ODA's complaint for injunctive relief that tree removal from his property caused damage. Brown alleged breach of contract, negligence, trespass, and in a fourth claim for relief, petitioned for a writ of mandamus to initiate appropriation proceedings for the taking of his property. Within these counterclaims, Brown alleged that Young's improperly removed trees from his land, allowed livestock to escape his property, and failed to remediate the land so that erosion and water run-off destroyed part of his property.

{¶13} While there is no dispute that the ODA was responsible for determining which trees were infested while the USDA was responsible for tree removal, Brown argues that the ODA was the proper party to bring his counterclaims against because the ODA and USDA were engaged in the "same undertaking." Within Brown's counterclaims, he specifically alleged that the ODA and USDA were "in a joint venture," and that the ALB

Program was "vicariously liable" for Young's actions taken during remediation of his property after tree removal.

{¶14} A joint venture is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers. *Hepperly v. Sickles*, 12th Dist. Warren No. CA2014-12-147, 2015-Ohio-2223, ¶ 11.

{¶15} After reviewing the record, we find that the ODA and USDA were not engaged in a joint venture. The agreement between the ODA and USDA specifically enumerates each department's role in the process of eradicating the ALB threat. According to the agreement, the USDA is the *only* party responsible for tree removal contracts. As expressed within a memo addressing delegation of duties, the ODA and USDA determined that the USDA

> will be responsible for securing and administering any contractual arrangements with third party contractors which may include the following: ALB host tree cutting and removal; stump grinding and/or herbicide treatments of stumps from the removed trees; chipping of removed host material; transportation and disposal of the chips; chemical treatments of non-infested host trees and other similar and related measures as necessary.

{¶16} The roles expressly assigned to each department are distinct, rather than interchangeable or implementable by either party. The USDA could not remove the infested trees and remediate the land without the ODA first identifying which trees were infested. Nor could the ODA remove the trees of its own accord, as that authority was exclusive to the USDA.

{¶17} The separate roles executed by each department, which were expressly set forth in the agreement, were also distinctive regarding control and how each duty was executed. The ODA directed its employees or contractors to investigate possible infestations, while the USDA separately controlled its employees and contractors in removing the trees and remediating the land. *See Evans v. United States*, 876 F.3d 375, 381 (1st Cir.2017) ("the conduct of federal employees is generally held to be discretionary unless a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. State law will not suffice"). The ODA had no control over the USDA directives, and vice versa. Thus, the departments did not exercise joint control.

{¶18} Nor did their agreement grant the ODA authority over the USDA or provide for reciprocal authority between the departments. This is especially true where the ALB Program was essentially federally funded, and the federal government directly indicated what the ODA could and could not do with the funding.[2] For example, within a memo between the federal ALB Eradication Program Director and the Chief of Ohio's Division of Plant Industry, the ODA agreed that it had to obtain "prior approval from the ALB Director or her designee prior to commitment of any Federal funds to include but not limited to all procurement actions and travel." The ODA was also required to identify and account for all equipment, supplies, and materials purchased.

{¶19} Moreover, there was no sharing of profits and losses, as the purpose of the agreement between the two departments was to protect Ohio's trees against the ALB threat, not to profit from individual landowners trying to rid their properties of ALB infestations. Any funds not expended in the fight against the ALB would be returned to the federal government, not shared with Ohio's treasury. Thus, the record does not support the

---

2. According to the Notice of Award for Cooperative Agreement, the federal government provided $1,494,000 while Ohio provided $147,407 toward the project.

existence of a joint venture between the ODA and the USDA.

{¶20} In addition to the lack of joint venture, the trial court properly determined that the ODA was not the proper party against which to allege breach of contract, given that ODA never signed a contract with Young's for tree removal. Young's contracted to be responsible for property damage and agreed to return land to its original conditions after tree removal. Thus, the ODA is not the proper party against which to allege breach of contract where there is simply no privity between the ODA and the alleged damage to Brown's property. For these same reasons, the ODA could not have committed negligence, trespass, or a taking where it had no role in, nor was responsible for, the tree removal.

{¶21} The trial court also found, and we agree, that there was no agency relationship between the ODA and the USDA. The agreement between the two never provided for any "agency" rights or responsibilities, and neither department had control over how the other completed its role of either surveying trees for removal or removing the identified trees.

{¶22} According to their agreement, the relationship between the two departments is described as a "mutually beneficial cooperative effort" rather than vesting either entity with principal or agent responsibilities or authorities. In fact, the ODA and USDA expressly agreed to "work cooperatively in carrying out the goals and objectives" of the ALB Project. The roles, responsibilities, and actions of the ODA and the USDA were separate from each other and lack any indicia of agency.

{¶23} In a similar case, the United States District Court for the District of Massachusetts determined that the Massachusetts Department of Conservation and Recreation ("MDCR") and the USDA did not enter an agency relationship during their combined efforts to eradicate ALB infestations in Massachusetts. *Evans v. United States*, D.Mass. No. 14-40042-DHH, 2016 U.S. Dist. LEXIS 135979, at *19-20 (Sep. 30, 2016). The court first determined that 7 U.S.C. 7751(a) provides that the USDA may cooperate

with a state, but the statute does not provide for any agency relationship. The court went on to determine that the agreement between the MDCR and the USDA did not address agency, and instead, described the relationship as "cooperative."

{¶24} The agreement between the MDCR and the USDA, similar to the one reached between the ODA and USDA, addressed that "eradication is achieved through the cooperative efforts of federal, state and local governments," and that federal and state agencies would work together "through this mutually beneficial cooperative effort," to address the dangers posed by the ALB. Given the language of the controlling federal statute and the agreement reached, the *Evans* Court held that no agency relationship existed. We agree with the reasoning of the federal court, and find that no agency relationship existed between the ODA and USDA for similar reasons.

{¶25} We also note that the trial court's ultimate decision granting a permanent injunction speaks directly to the separate actions and authority of the ODA and the USDA. In its judgment entry granting the permanent injunction, the trial court limited the scope of the injunction in favor of the ODA for the purposes of "surveying and tagging (if applicable) the trees" on Brown's property. However, the trial court specifically noted that "this Order does not require Brown to allow access to his property to the United States Department of Agriculture, its employees and contractors."

{¶26} The trial court's decision thus recognizes the limited scope of the ODA's injunctive relief specific to its singular role in the ALB Program; surveying and tagging trees for removal. Whether the USDA, through Young's, is liable for damage to Brown's property or whether the USDA is entitled to injunctive relief to allow tree removal on Brown's property were questions not raised to the trial court given the sperate positions of the ODA and the USDA.

{¶27} After reviewing the record and considering all of Brown's arguments, we find

the trial court's decision to involuntarily dismiss Brown's counterclaims was supported by the manifest weight of the evidence and that such decision was not erroneous as a matter of law. Brown's single assignment of error is, therefore, overruled.

{¶28} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.